886 F.2d 157
 56 Ed. Law Rep. 108
 Larry LILE and Clayton Soukup, individually and on behalf of
all others similarly situated, Appellants,
v.
The UNIVERSITY OF IOWA HOSPITALS AND CLINICS, John W.
Colloton, Director, and the University of Iowa, Appellees.
 No. 88-2669SI.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 10, 1989.
Decided Sept. 19, 1989.
 
 Janice E. Rutledge, Iowa City, Iowa, for appellants.
 Merle Wilna Fleming, Des Moines, Iowa, for appellees.
 Before ARNOLD, Circuit Judge, BRIGHT, Senior Circuit Judge, and BOWMAN, Circuit Judge.
 BRIGHT, Senior Circuit Judge.
 
 
 1
 Larry Lile and Clayton Soukup appeal the district court's[1] dismissal of their action against the University of Iowa Hospitals (Hospital) for alleged violations of both the Hill-Burton Act and 42 U.S.C. Sec. 1983. We affirm.
 
 I. BACKGROUND
 
 2
 This case originates from Larry Lile and Clayton Soukup's attempts to enforce the Hospital's obligation under the Hill-Burton Act, 42 U.S.C. Sec. 291, et seq., to provide uncompensated care to indigent patients.
 
 
 3
 Under the Hill-Burton Act, health care facilities which receive federal funding for use in constructing improvements to their physical plant incur an obligation to provide uncompensated or free care to those patients unable to pay. 42 U.S.C. Sec. 291c(e)(2) (1982). Applicable regulations of the Department of Health and Human Services (HHS) specify that a facility must provide this free care until the loan amount it has received has been repaid or for a twenty-year period, whichever occurs first. 42 C.F.R. Sec. 124.501 (1987). Regulations governing the computation of free care exclude any amount which a facility receives from a third party insurer or through a "governmental program."[2] 42 C.F.R. Sec. 124.509 (1987).
 
 
 4
 The appellant Hospital had received Hill-Burton funds for construction purposes and in turn provided free care to its indigent patients. In 1981, the Hospital ceased providing the Hill-Burton mandated free care, claiming that it had satisfied the amount of its loan obligation under the Act. In making this assessment, the Hospital included in its computation money it received from the Iowa Indigent Patient Care Program, commonly known as the "state papers program." See Iowa Code Secs. 255.1-255.30 (1985). Under this program, the Hospital is reimbursed by state appropriations for care provided to qualifying indigent patients.[3]
 
 
 5
 Lile and Soukup, Iowa citizens, incurred medical bills following various stays at the Hospital beyond the date the Hospital claims it had satisfied its Hill-Burton obligation. Some of these medical expenses in question were covered by the state papers program. Each claims, however, that he was eligible to receive free care under the Hill-Burton program for remaining medical expenses and, therefore, would not owe the Hospital for unpaid bills.
 
 
 6
 Lile, Soukup and four other individuals complained to the regional office of HHS, arguing that the Hospital improperly counted state papers patients toward its Hill-Burton mandated free care requirement because the Hospital received money for these patients from a "governmental program" in violation of HHS regulations. They also charged that the Hospital improperly credited toward its free care requirement care for patients who had not requested inclusion in the Hill-Burton program. The regional office agreed, concluding that money the Hospital received through the state papers program fell within the meaning of a "governmental program" as used in 42 C.F.R. Sec. 124.509 and therefore could not be credited against the Hospital's free care obligation under the Hill-Burton Act.
 
 
 7
 On appeal, the Assistant Surgeon General reversed the regional office and dismissed the complaint. He reasoned that the Hospital could credit the state papers funds toward its Hill-Burton obligation because the state papers funds were appropriated by the state legislature to a state-owned facility and were unavailable for use by any other facility in the state.
 
 
 8
 Lile and Soukup then filed a class action suit in federal court to enforce provisions of the Hill-Burton Act, as provided by 42 U.S.C. Sec. 300s-6 (1982). They alleged that the Hospital violated both the Hill-Burton Act and its accompanying regulations by crediting the amount it received through the state papers program toward its free care obligation and that this violation created a constitutional deprivation, actionable under 42 U.S.C. Sec. 1983.
 
 
 9
 The Hospital moved to dismiss the entire complaint on eleventh amendment grounds and for failure to state a claim upon which relief could be granted. It also moved to dismiss the section 1983 count, contending that the enforcement system provided in the Hill-Burton Act was sufficiently comprehensive as to preclude a section 1983 action.
 
 
 10
 The district court rejected the attack to the entire complaint but sustained the motion to dismiss the section 1983 count. The trial court reasoned that the remedial devices provided under the Hill-Burton Act were sufficiently comprehensive that a congressional intent to preclude a section 1983 action should be inferred. Additionally, the district court denied class action certification, ruling that certification would be premature.
 
 
 11
 The Hospital later moved for summary judgment on the remaining claims brought under the Hill-Burton Act, see 42 U.S.C. Sec. 300s-6, relying on the Assistant Surgeon General's determination that the Hospital could properly credit state papers funds towards its Hill-Burton obligation, and asserting that exclusion for Hill-Burton credit under a "governmental program" as used in 42 C.F.R. Sec. 124.509 referred only to federally funded programs and not the Iowa "state papers program." Following discovery, the Hospital amended its motion to include a challenge to Lile and Soukup's standing to sue. Lile and Soukup then cross-motioned for summary judgment.
 
 
 12
 After a hearing and submission of stipulated facts, the district court rejected the standing challenge but granted the Hospital's motion for summary judgment. The court found that the Hospital did not violate the Hill-Burton Act through its action in crediting state papers program money toward its free care obligation because: (1) the restriction against reimbursement from a "governmental program" applied only to federal programs and not to instances where state-owned hospitals received state funds to provide care to indigent patients; and (2) the Act did not require that individual patients whose care is counted toward the Hill-Burton free care obligation must request inclusion in the Hill-Burton program.
 
 
 13
 This appeal followed.
 
 II. DISCUSSION
 Hill-Burton Act
 
 14
 Lile and Soukup argue that the district court erred as a matter of law in concluding that the phrase "governmental program" as used in 42 C.F.R. Sec. 124.509 refers solely to federal programs. They contend that this restrictive interpretation is contrary to both the language and spirit of the Hill-Burton Act and its accompanying regulations.
 
 
 15
 In rejecting this argument, the district court relied primarily on the Assistant Surgeon General's decision. We review this agency decision under the principals outlined in Maloley v. R.J. O'Brien & Assoc., 819 F.2d 1435 (8th Cir.1987).
 
 
 16
 In Maloley, this court examined the Commodity Futures Trading Commission's application of the Commodity Exchange Act to claims of fraud and misrepresentation. This court observed that two standards of review could be applied to an agency's application of law to undisputed or established facts and held that the choice between the two standards turned "on practical policy considerations of the comparative qualifications and competencies of courts and agencies." Id. at 1441.
 
 
 17
 This court stated that where the issue to be decided by the agency as initial decisionmaker falls outside the area generally entrusted to the agency and is one in which courts possess special competence, the courts should grant a lesser level of deference to the agency decision. Id. Furthermore, the courts should grant lesser deference to an agency interpretation, even if made within the specialized knowledge of the agency, in instances where " 'the agency diet is food for the courts on a regular basis.' " Id. (quoting Hi-Craft Clothing Co. v. NLRB, 660 F.2d 910, 915 (3d Cir.1981).
 
 
 18
 Conversely, where the agency's specialized knowledge is involved and Congress has vested the agency with discretion in a technical area, the court should grant broader deference and uphold the agency's conclusion if the conclusion is rationally based. Maloley, 819 F.2d at 1441; see also Hall v. Lyng, 828 F.2d 428, 435 (8th Cir.1987) (courts will accord substantial deference to an agency decision where agency expertise is involved).
 
 
 19
 In selecting a standard of review, we note that the Assistant Surgeon General's decision centers upon the interpretation of a specific regulatory term, "governmental program," that has not been "food for courts on a regular basis." Furthermore, the question presented centers more upon policymaking than upon resolution of two opposing positions and therefore lies within the agency's special competence. For these reasons, we believe the agency decision is entitled to broad deference.
 
 
 20
 This determination is also consistent with the Supreme Court decisions relating to the scope of judicial review of an agency's interpretation of a statute the agency is authorized to administer. See Young v. Community Nutrition Inst., 476 U.S. 974, 981, 106 S.Ct. 2360, 2364, 90 L.Ed.2d 959 (1986) (where an agency's interpretation is sufficiently rational, a court is precluded from substituting its own judgment for the agency's decision) and Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) (a court may not substitute its own construction of a statutory provision for an agency's reasonable interpretation).
 
 
 21
 An examination of the agency decision reveals that the Assistant Surgeon General resolved the question in a rational manner. Although the question is open to debate, the decision is not contrary to the statute and regulations. Therefore, we uphold the district court's ruling which is based upon this agency decision and reject Lile and Soukup's argument.[4]
 
 
 22
 Lile and Soukup alternatively challenge the district court's decision on the basis that the Hospital could not count toward its free care obligation care it gave to state papers patients who did not also request benefits under the Hill-Burton Act. They contend that these state papers patients never requested Hill-Burton free care within the meaning of 42 C.F.R. Sec. 124.502 because they never asked the Hospital for any Hill-Burton Act assistance, they were never even told they were receiving this assistance, and they received no benefits from it. In particular, Lile and Soukup argue that only the Hospital, and not the patients, benefited because care the Hospital was reimbursed for under the state papers program was also counted towards its Hill-Burton free care obligation.
 
 
 23
 The district court rejected this argument, determining that section 124.502 does not require that patients or someone on their behalf request free care specifically under the Hill-Burton Act. Rather, the court determined that the regulation only required an indication that a person is unable to pay.
 
 
 24
 This determination comports with the language of section 124.502.[5] The regulation indicates that a request for uncompensated care is triggered by a patient's inability to pay. Here, the status of state papers eligibility indicates an inability to pay. Therefore, we agree with the district court's finding of no regulatory violation.
 
 
 25
 This determination on the merits makes it unnecessary for us to decide other issues raised on appeal; that is, whether the district court erred in dismissing plaintiffs' section 1983 action and denying class certification.
 
 III. CONCLUSION
 
 26
 Accordingly, we affirm the summary judgment in favor of defendant dismissing the plaintiffs' action.
 
 
 
 [1]
 The Honorable William C. Stuart, United States Senior District Judge for the Southern District of Iowa
 
 
 [2]
 42 C.F.R. Sec. 124.509 (1987) provides:
 A facility may not include the following in computing the uncompensated services it provides:
 (a) Any amount that the facility has received, or is entitled to receive, from a third party insurer or under a governmental program, except where the person to whom the facility provides services refused to take reasonable actions necessary to obtain the entitlement.
 (b) Any amount in excess of the payment that the facility has received, or is entitled to receive, from a third party insurer or under a governmental program where the facility has agreed or is otherwise required to accept this payment as payment in full for the services[.]
 
 
 [3]
 The district court referred to the "state papers program" as follows:
 The University of Iowa Hospital claims it repaid its Hill-Burton grant on January 16, 1981. In making that determination it included those patients whose care was paid for by the State of Iowa through the state's "state papers program" (Iowa Code 255) under which state appropriations for treatment of indigent patients are apportioned among the counties according to population. Each county is responsible for distributing the papers among needy residents.
 (Dist.Ct. Order dated Nov. 16, 1987).
 
 
 [4]
 Lile and Soukup's additional argument that the agency decision is entitled to lesser deference because it conflicts with an earlier agency interpretation lacks merit. While a court may grant lesser deference to agency interpretations where inconsistency between final agency decisions exists, see INS v. Cardoza-Fonseca, 480 U.S. 421, 446-47 n. 30, 107 S.Ct. 1207, 1221 n. 30, 94 L.Ed.2d 434 (1987), that is not the case here. Here, the inconsistency lies between a decision of the regional office and the Assistant Surgeon General and not between final agency decisions
 
 
 [5]
 42 C.F.R. Sec. 124.502(k) (1987) provides definitions for the Hill-Burton Act, including:
 "Request for uncompensated services" means any indication by or on behalf of an individual seeking services of the facility of the individual's inability to pay for services. A request for uncompensated services may be made at any time, including following institution of a collection action against the individual.