**LOWELL CONSORTIUM, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF LABOR, Respondent.**

No. 89–1685.

United States Court of Appeals, First Circuit.

Heard Dec. 5, 1989.

Decided Jan. 10, 1990.

Patricia Sullivan Talty, Asst. City Sol., for the City of Lowell, Mass., with whom Thomas E. Sweeney, City Sol., was on brief, for petitioner.

Vincent C. Costantino, Attorney, Office of the Sol., U.S. Dept. of Labor, with whom Robert P. Davis, Sol. of Labor, Charles D. Raymond, Associate Sol. for Employment and Training Legal Services, and Harry L. Sheinfeld, Counsel for Litigation, were on brief, for the respondent.

Before BOWNES, BREYER and SELYA, Circuit Judges.

BOWNES, Circuit Judge.

In this case involving the Comprehensive Employment and Training Act (CETA), the Lowell Consortium, an administrative entity which runs job training programs in the Lowell, Massachusetts area, petitions us to set aside the Secretary of Labor's order requiring it to repay certain federal funds. At issue is the Secretary's disallowance of over a million and a half dollars expended by the Consortium in its administration of a CETA grant.[1]

## I. BACKGROUND

In 1978 the Lowell Consortium (Lowell or the Consortium) was selected as one of fifteen CETA "prime sponsors" to administer the Employment Opportunities Pilot Program (EOPP), a program designed to provide welfare recipients with job training, placement, and support services such as day care and transportation. The Consortium was awarded two grants as a

---

1. CETA was originally enacted in 1973 as Pub.L. No. 93–203, and was amended by Pub.L. Nos. 93–567, 94–444 and 95–524. This action arises under the 1978 amendments of CETA, Pub.L. No. 95–524, 92 Stat. 1909. CETA was replaced, effective Oct. 13, 1982, by the Job Training Part- nership Act of 1982, Pub.L. No. 97–300, 96 Stat. 1324 (now codified at 29 U.S.C. § 1501 *et seq.* (1982 Ed., and Supp. II)). Pending cases continue to be adjudicated under CETA. JTPA, sec. 181(e), 29 U.S.C. § 1591(e).

prime sponsor, the first for the period from September 29, 1978 through December 31, 1979 and the second for the period from July 1, 1979 through September 30, 1981. Pursuant to the second grant, the Department of Labor (DOL or the Department) issued a Letter of Credit to the Consortium to fund various EOPP projects.

In March 1981, prior to the expenditure of all of these funds, DOL notified Lowell and the other prime sponsors that the EOPP program would be terminated by the end of the fiscal year (September 30, 1981). The Department requested the return of all unobligated funds. Notwithstanding this notification, on May 15, 1981, the Consortium published a Request for Proposals for a training program under the EOPP. The Consortium received two bids in response and, on July 6, 1981, executed a contract with Employment and Training Resources, Inc. (ETR) to train 300 people during the period from July 6 through September 30, 1981.

Although the Request for Proposals sought offers for "short term intensive training" programs in a number of skill areas, the agreement between the Consortium and ETR provided that $1,459,043.40 of the total contract amount of $1,568,-483.40 (approximately 93 percent) was to be used for equipment rental and purchases. The equipment was set up and the ETR program run in a newly established permanent skills center in Lowell. Some of the purchased equipment did not arrive until after the contract expired. While some pieces of equipment are still in use at the center, others have never been used. It is unclear how many people were actually served by the program. The estimates range between 70 and 156, well below the 300 stated in the ETR contract.[2]

In the spring of 1982 independent auditors retained by the City of Lowell called into question the propriety of the Consortium's contract with ETR. After full investigation of the matter, a DOL Grant Officer issued a Final Determination disallowing the total cost of the contract because the Consortium did not demonstrate that it had the authority to enter into the ETR contract and because the expenditures made under the contract were not reasonable in light of the contract's objectives.[3]

Lowell appealed the disallowance to the DOL's Office of Administrative Law Judges and a hearing was held on January 11 and 12, 1989. The Administrative Law Judge (ALJ) found that the Consortium failed to meet its "first and vital burden" of proving that it had the authority to enter into the ETR contract. The ALJ ordered the Consortium to pay DOL the sum of $1,568,483.00. The Consortium appealed to the Secretary of Labor. When the Secretary declined to review the case, the ALJ's order became her final decision.

The Consortium raises three challenges to the Secretary's decision. It first contends that it had authority to enter into the ETR contract based on its ongoing course of conduct with DOL. It further argues that the expenditures made were reasonable in light of the program objectives. Finally, the consortium claims that even if it failed to comply with the relevant CETA regulations, the case should be remanded to the Secretary for redetermination of the sanction of full repayment in light of the equities of the situation.

2. Section I.A., July 6, 1981 Agreement for a Transitional Opportunities Program Between Employment & Training Resources and the Office of the City Manager, CETA Administration of Lowell, Massachusetts, Employment Opportunities Pilot Program, Attachment to Joint Exhibit 2, *see* Petitioner's Brief Addendum p. 16.

3. Section 106(b) of CETA, 29 U.S.C. § 816(b) (repealed 1982), empowered the Secretary to investigate a grant recipient whenever she had reason to believe, through a complaint, an audit, or otherwise, that the recipient was misusing CETA funds. Section 106(b) further provided that the Secretary determine the truth of the allegation involved not later than 120 days after receiving the complaint. DOL's Final Determination in this case was not issued until September 9, 1987, almost five years after the audit. The Supreme Court has held, however, that the Secretary does not lose the power to recover misused CETA funds merely due to the expiration of the 120-day period. *Brock v. Pierce County,* 476 U.S. 253, 258–66, 106 S.Ct. 1834, 1838–42, 90 L.Ed.2d 248 (1986).

434

## II. DISCUSSION

The Secretary's decision is conclusive if her factual determinations are supported by substantial evidence. Section 107(b) of CETA, 29 U.S.C. § 817(b) (repealed 1982). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.... This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence...." *Consolo v. F.M.C.*, 383 U.S. 607, 620–21, 86 S.Ct. 1018, 1026–27, 16 L.Ed.2d 131 (1966).

Relying on the testimony of its former EOPP director, the Consortium argues that it had authority to enter the contract based on the course of conduct established between it and the DOL. The former director testified that during his eight years as a CETA administrator the usual practice had been to outline a project to DOL representatives and, if no objections were raised, to proceed with the program and prepare the necessary paperwork at a later date. The Consortium claims that it gave a DOL representative a copy of the Request For Proposals and the ETR proposal, that it sent the representative a letter seeking project approval, and that data on the ETR contract was sent to Washington on a regular basis via the Management Information System, a DOL computer system of which the Consortium was part. The Consortium contends therefore that since DOL knew about the proposal and did not object to it, DOL thereby authorized the Consortium to act as it did.

We find that the Consortium failed to meet its burden of showing that it had the requisite authority to enter into the ETR contract. DOL acknowledges that an agency representative received copies of the Request for Proposals, the ETR proposal, and a letter requesting approval. It denies that any authorization, oral or written, was given. The proposal was given to the DOL representative at a meeting held to negotiate the return of EOPP funds, not to authorize further expenditures. The

representative did not respond to Lowell's letter seeking approval. Nowhere in the record is there evidence of prior written authorization of the ETR contract. The only writing the Consortium offers is a backdated letter designating the ETR contract "approvable," which was signed at Lowell's request by a DOL employee who apparently did not even have the authority to approve the proposal. This letter was requested by the Consortium in order to satisfy its auditors' concern regarding the authorization for the ETR contract.

We find that there was substantial evidence supporting the Secretary's determination that Lowell lacked authorization to enter into the contract. Two additional sets of facts bolster this conclusion. The original agreement between the Consortium and ETR stated that the execution of the agreement was "subject to approval by the United States Department of Labor, Office of Welfare Reform" and that "[n]o costs shall be incurred prior to the receipt of such approval." The Consortium subsequently amended the agreement to omit reference to DOL and to state that "[e]xecution of the Agreement is subject to approval by the Lowell Prime Sponsor." This change indicates not only that Lowell lacked authorization from DOL to enter into the ETR contract, but knew that it lacked such authorization.

Second, there is evidence in the record that the Consortium and ETR discussed using EOPP funds to equip the Lowell Skills Center well before execution of the ETR contract. In a letter dated February 9, 1981, the president of ETR wrote to the Consortium's EOPP director:

> The [enclosed] proposal ... basically attempts to utilize EOPP funds in part or in whole to facilitate the development of a skill center.... I feel it would be a tragedy for the City of Lowell and its surrounding towns to send 8 million dollars back to Washington. This is especially true if it can be spent this year with "spin-off" benefits for years to come.

Appendix, p. 470. The Consortium's subsequent actions show that it agreed with this

approach, despite the EOPP's emphasis on training, not procurement of equipment, and despite DOL's notice of the program's curtailment. In the words of the ALJ:

> This unauthorized conduct normally would appear to be either irrational or controlled by an overwhelming desire to effectuate what it believed to be a worthwhile means of serving its clients. I do not believe the conduct was irrational. I believe the Consortium's zeal to serve its clients one last time with federal funds was also influenced by its desire to acquire, with those funds, equipment it could employ to effectuate other programs administered through its skills center.

In view of our conclusion that the Consortium lacked authorization to enter into the ETR contract, it is not necessary for us to consider whether the expenditures under the contract were justified.

Nor need we evaluate the Consortium's claim that the sanction of repayment in full is excessively severe and the case should therefore be remanded to the Secretary for consideration of the equities involved. The Secretary does have the power to waive DOL's right to recoupment. Section 106 of CETA, 29 U.S.C. § 816 (repealed 1982). The Consortium, however, made no request for equitable relief in the proceedings below. Failure to raise the issue at the appropriate time and in accordance with the agency's rules of practice precludes our review. *See State of Maine v. U.S. Dept. of Labor*, 669 F.2d 827, 832 (1st Cir.1982) (ALJ not required to rule on an issue of discretion unless aggrieved party asks that discretion be exercised); *City of Camden, N.J. v. U.S. Dept. of Labor*, 831 F.2d 449, 452 (3d Cir.1987) (Secretary not required to consider waiving repayment of federal funds where city failed to present equitable arguments below).

Affirmed.