**STATE OF MISSOURI, DEPARTMENT OF SOCIAL SERVICES, Petitioner,**

**v.**

**UNITED STATES DEPARTMENT OF EDUCATION, Lauro F. Cavazos, Secretary, and John Doe as unknown successor to the Office of Secretary, Respondent.**

No. 90–3050.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1991.

Decided Jan. 7, 1992.

---

**6.** The total Bill of Costs is $2608.58, Addendum of William Pou at 30, and will be divided among the three defendants.

Before McMILLIAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

McMILLIAN, Circuit Judge.

The State of Missouri Department of Social Services ("DSS") petitions pursuant to 20 U.S.C. § 1234g for review of a final agency action by the United States Department of Education ("Education"). Specifically, DSS challenges an order of the Secretary of Education ("Secretary") directing DSS to pay back $198,572.64[1] in grant monies received through Education's Vocational Rehabilitation ("VR") program because DSS failed to account properly for its use of the funds, as required by Education's regulations. *Application of State of Mo., Dep't of Social Serv.*, No. 89–32–R (Dep't of Educ. Oct. 26, 1990) (affirming decision and order of the ALJ). In this petition for review, DSS argues that the Secretary erred in finding that (1) an allocation plan approved by the United States Department of Health and Human Services ("HHS"), which governs "indirect costs" of DSS, did not authorize the VR expenditures in dispute because they are "direct costs" under the applicable regulations and (3) DSS has not proven that its failure to account properly for the expenditures is excused by "mitigating circumstances" as defined by the regulations. For the reasons discussed below, we deny the petition for review.

### Background

Under the Rehabilitation Act, 29 U.S.C. §§ 701–796i, Education is the federal agency responsible for administering the federal VR program. Accordingly, Education distributes grant monies to states to assist them in providing services to handicapped individuals. During the fiscal year ending June 30, 1985 ("FY85"), Education awarded the State of Missouri a grant to help fund VR services in the state. DSS received and was responsible for administering this grant.

Richard Beaver, Jefferson City, Mo., for petitioner.

Ronald Petracca, Washington, D.C. (Edward C. Stringer and Ronald B. Petracca, on the brief), for respondent.

---

**1.** Of this amount, DSS agrees that it owes $8,062.00, but disputes its obligation to refund the remaining $190,510.64.

During FY85, some DSS employees worked both on the federally-funded VR services and on state-funded programs under the Missouri Bureau of the Blind ("BOB"). DSS channeled $190,510.64 in VR grant monies toward its employees' salaries in FY85. However, no one kept time and attendance records, or any other records, of the proportionate amount of employee time spent on these two separate cost objectives, although DSS apparently did conduct a time study of employee activity during four nonconsecutive weeks in 1985.

A state auditor examined DSS' accounting practices for the fiscal years ending June 30, 1984, and June 30, 1985. As a result, the auditor reported accounting violations in connection with VR expenditures for personnel salaries. Specifically, the auditor found that DSS' accounting practices did not comply with the following federal regulation:

> Amounts charged to grant programs for person[nel] services, regardless of whether treated as direct or indirect costs, will be based on payrolls documented and approved in accordance with generally accepted practice of the State or local agency. Payrolls must be supported by time and attendance or equivalent records for individual employees. Salaries and wages of employees chargeable to more than one grant program or other cost objective will be supported by appropriate time distribution records. The method used should produce an equitable distribution of time and effort.

34 C.F.R. Pt. 74, app. C, pt. II.B.10.b (1985). In addition, the auditor considered the 1985 four-week time study of DSS employee activity and concluded that it was not statistically valid.

By letter dated July 21, 1989, Education served DSS with notice of disallowance of $475,718.10 in past VR funding on grounds that an audit of DSS' VR accounts revealed improper accounting of that amount. DSS

sought review of this determination and the matter was heard on May 4, 1990, by an Administrative Law Judge ("ALJ") at Education. The ALJ issued a Decision and Order dated August 30, 1990, finding, among other things, that because of improper accounting practices, DSS owed Education $190,510.64 for VR expenditures during FY85.[2] DSS appealed the ALJ's decision to the Secretary of Education and the Secretary affirmed. *Application of State of Mo., Dep't of Social Serv.*, No. 89–32–R (Dep't of Educ. Oct. 26, 1990) (hereinafter "slip op."). This petition for review followed.

## Discussion

### *"Direct" versus "indirect" costs*

DSS first argues that the Secretary erred in finding that a cost allocation plan approved by HHS, DSS' "federal cognizant agency," which covered the relevant time period, did not authorize DSS' VR expenditures for employee salaries, even though the cost allocation plan included salary distribution procedures for employees working on BOB programs. We disagree.

HHS is undisputedly the "federal cognizant agency" designated to approve cost allocation plans for DSS pursuant to 34 C.F.R. Pt. 74, app. C, pt. I.J.4.b (1985), which states:

> At the grantee department level in a State, a single Federal agency will have responsibility ... for the negotiation, approval and audit of the indirect cost proposal. Cognizant Federal agencies have been designated for this purpose.

However, based upon the above-cited provision, the Secretary found that the HHS-approved cost allocation plan at issue applied only to "indirect costs." Slip op. at 3. By contrast, the disputed expenditures on employee salaries were determined to be "direct costs." *Id.* "Direct costs" are defined at 34 C.F.R. Pt. 74, app. C, pt. I.E.1., 2. (1985) as follows:

---

2. The ALJ found DSS owed Education a total of $198,572.64; of that amount, DSS does not dispute its liability for $8,062.00. Recovery of the remaining amount originally sought by Education, approximately $277,000, either was not due or was barred by the statute of limitations.

Direct costs are those that can be identified specifically with a particular cost objective.

... Typical direct costs chargeable to grant programs are ... [c]ompensation of employees for time and effort devoted specifically to the execution of grant programs.

The Secretary thus found HHS' approval of the cost allocation plan in question irrelevant. Slip op. at 3.

 On review of Education's interpretation of its own regulations, our standard "is a narrow one, deferential to the agency's interpretation of its own regulations and only permitting reversal if the agency action is without a rational basis." *Education Assistance Corp. v. Cavazos*, 902 F.2d 617, 622 (8th Cir.1990) (*Cavazos*); *see also Lile v. University of Iowa Hospitals & Clinics*, 886 F.2d 157, 160 (8th Cir. 1989) (in technical area, agency decision based upon interpretation of specific term in agency's own regulation entitled to broad deference). The Secretary's determination that the HHS-approved cost allocation plan does not satisfy Education's record-keeping requirements is based upon a rational interpretation of Education's own regulations and, in fact, is within the plain meaning of the regulations. Accordingly, we will not set aside this finding.[3]

*Mitigating circumstances*

 The Secretary found that no "mitigating circumstances" exist to relieve DSS of its obligation to return the $190,510.64 in dispute. Slip op. at 3. The Secretary

determined that the evidence did not support a finding that HHS ever adopted a cost allocation plan which included a division between VR and BOB time distribution and that a letter to DSS from the Regional Commissioner for Education's Region VII did not tend to show that DSS reasonably relied on representations of the Regional Commissioner because the letter was sent to DSS one month after the end of the fiscal year. *Id.*

DSS argues that the Secretary erred by failing to find "mitigating circumstances" in this case, as set forth in 34 C.F.R. § 81.-23(a), (c) (1990). Subsection (a) of § 81.23 provides:

(a) A recipient that is a State or local educational agency and that has made an unallowable expenditure or otherwise failed to account properly for funds is not required to return any amount that is attributable to the mitigating circumstances described in paragraph (b), (c) or (d) of this section.

Subsection (c), referenced in subsection (a) above, provides:

(c) Mitigating circumstances exist if it would be unjust to compel the recovery of funds because the recipient's violation was caused by [Education's] failure to provide timely guidance. *To prove mitigating circumstances under this paragraph, the recipient shall prove that—*

(1) The recipient in good faith submitted a written request for guidance with respect to the legality of a proposed expenditure or practice;

---

**3.** At the administrative level, DSS additionally suggested that it nonetheless satisfied that portion of the regulation which permits "equivalent records." 34 C.F.R. Pt. 74, app. C, pt. II.B.10.b. The regulation provides: "[p]ayrolls must be supported by time and attendance *or equivalent records* for individual employees. Salaries and wages ... chargeable to more than one grant program or other cost objective will be supported by appropriate time distribution records. *The method used should produce an equitable distribution of time and effort." Id.* (emphasis added). Although DSS admitted that it did not keep employee time and attendance records, it claimed that the 1985 time study, or alternatively the HHS-approved cost allocation plan, produced an equitable distribution of employee

time and effort spent on the VR and BOB programs during FY85 and thus is equivalent to time and attendance records. In briefs submitted to this court, DSS did not appeal the Secretary's determination that DSS failed to meet the "equivalent records" portion of the regulation; however, in response to oral argument to this effect, we hold that the Secretary's interpretation of the "equivalent records" portion of 34 C.F.R. Pt. 74, app. C, pt. II.B.10.b does not lack a rational basis and that there is substantial evidence in the record to support the Secretary's determination that neither the 1985 time study nor the HHS-approved cost allocation plan can be considered "equivalent records."

(2) The request was submitted to [Education] at the address provided by notice published in the Federal Register under this section;

(3) The request—

(i) Accurately described the proposed expenditure or practice; *and*

(ii) Included the facts necessary for [Education's] determination of its legality;

(4) The request contained the certification of the chief legal officer of the appropriate State educational agency that the officer—

(i) Examined the proposed expenditure or practice; *and*

(ii) Believed it was permissible under the State and Federal law applicable at the time of the certification;

(5) The recipient reasonably believed the proposed expenditure or practice was permissible under State and Federal law applicable at the time it submitted the request to [Education];

(6) No [Education] official authorized to provide the requested guidance responded to the request within 90 days of its receipt by [Education]; *and*

(7) The recipient made the proposed expenditure or engaged in the proposed practice after the expiration of the 90–day period.

*Id.* § 81.23(c) (emphasis added). DSS argues that because it has met the specific criterion set forth in (c)(5) above, it is entitled to relief from the Secretary's order.

Contrary to DSS' mistaken assumption, § 81.23(c) requires compliance with *all* the criteria set forth above, not just one of them. Section 81.23 is the interpretation of a statute (20 U.S.C. § 1234b) by the agency charged with administering the statute and therefore is entitled to considerable weight and deference upon review. *Chevron U.S.A. Inc. v. NRDC,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984); *Federal Election Comm'n v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 31–32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981). Reviewing the Secretary's interpretation of § 81.23 under the narrow, deferential standard described above, we hold that the Secretary's interpretation is not without a rational basis. *See, e.g., Cavazos,* 902 F.2d at 622. We further hold that the Secretary's finding that the HHS-approved cost allocation plan and the letter from the Regional Commissioner lack probative value is supported by substantial evidence in the record and reflects an application of proper legal standards. *See Bell v. New Jersey,* 461 U.S. 773, 792, 103 S.Ct. 2187, 2198, 76 L.Ed.2d 312 (1983). Accordingly, we decline to set aside the Secretary's decision that DSS has failed to prove mitigating circumstances so as to relieve DSS of its obligation to return the funds in dispute.

While we acknowledge that some extenuating circumstances may exist to explain DSS' confusion over its record-keeping responsibilities, we decline to set aside the Secretary's findings that DSS is obligated to return the disputed $190,510.64 on grounds of improper accounting of these direct costs and that DSS' actions are not excused by mitigating circumstances as that term is specifically defined in the regulations. Accordingly, this petition for review is denied.