Aubrey KINION;  Lois Kinion, Appellants,

v.

UNITED STATES of America;  Mike Espy,
Secretary of United States Department
of Agriculture;  Farmers Home Adminis-
tration, Appellees,

Farm Bureau Mutual Insurance
Company of Arkansas, Inc.,
Defendant.

No. 93–1067.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 17, 1993.

Decided Nov. 3, 1993.

David D. Stills, Fayetteville, AR, argued (John C. Everett, on the brief), for appellants.

Stephen M. Reilly, U.S. Dept. of Agriculture, Washington, DC, argued (Matthew W. Fleming, Asst. U.S. Atty., Forth Smith, AR, and Raymond W. Fullerton, U.S. Dept. of Agriculture, Washington, DC, on the brief), for appellees.

Before MAGILL and HANSEN, Circuit Judges, and HAMILTON,[*] District Judge.

MAGILL, Circuit Judge.

Aubrey and Lois Kinion (the Kinions) appeal the district court's[1] denial of their summary judgment motion and the grant of summary judgment to the United States. This case involves the interpretation of the Farmers Home Administration's (FmHA) regulations that implement the debt restructuring and loan servicing provisions of the Agricultural Credit Act of 1987 (the Act). Because we hold that the regulations require state director approval of a proposed buyout and that the FmHA's failure to meet the procedural requirements of the statute did not divest the FmHA of jurisdiction to act, we affirm the judgment of the district court.

## I. BACKGROUND

The Kinions owe the United States $430,-000. This debt is evidenced by promissory notes secured by mortgages on the Kinions' farm in Washington County, Arkansas. In November 1988, the Kinions became delinquent on these promissory notes, and the FmHA forwarded to the Kinions a "Notice of the Availability of Loan Service Programs for Delinquent Borrowers." On January 4, 1989, the Kinions completed and forwarded an application to the FmHA requesting consideration for possible debt restructuring and loan servicing. On March 3, 1989, the county supervisor determined that the Kinions were ineligible for loan restructuring because the present value of their proposed restructured loan would be less than the net recovery value—calculated to be $79,836[2]—of the Kinions' farm. The county supervisor, however, informed the Kinions on March 3, 1989, that they were eligible for "pay off"[3] at the net recovery value of $79,836. Under this process, the Kinions would pay the government the net recovery value of their farm, and the government would forgive the balance of the outstanding loan. The state supervisor never authorized the county supervisor's net recovery value determination.

On March 5, 1989, a severe snow and ice storm hit Washington County, Arkansas. As a result, two poultry houses on the Kinions' farm collapsed due to heavy accumulations of snow and ice. Farm Bureau Mutual Insurance Company of Arkansas insured the poultry houses, and on March 9, 1989, forwarded a check for $264,000 to the Kinions.[4] Upon receiving notice of the collapse of the poultry houses, the FmHA county supervisor notified the Kinions that the FmHA had put their file on hold. The county supervisor later informed the Kinions that the FmHA would not allow the Kinions to pay off their debt to the government for the net recovery value of

---

[*] THE HONORABLE JEAN C. HAMILTON, United States District Judge for the Eastern District of Missouri, sitting by designation.

[1] The Honorable H. Franklin Waters, Chief Judge, United States District Court for the Western District of Arkansas.

[2] The net recovery value is the estimated amount of money the government would recover from the sale of a debtor's mortgaged property, minus expenses, after an involuntary liquidation. 7 U.S.C. § 2001(c)(2) (1988). The FmHA has adopted specific procedures for calculating the net recovery value of a debtor's property. 7 C.F.R. § 1951.909(f) (1989).

[3] We find that pay off and buyout are used interchangeably by the FmHA. *Compare* 7 C.F.R. § 1951.909(h)(3)(iv) ("buy out at net recovery value") *with* Appellant's Br. at 43 (FmHA document notifying Kinions of eligibility for "PAY OFF AT NET RECOVERY VALUE").

[4] As a condition of receiving an FmHA loan, the FmHA required the Kinions to acquire insurance for the poultry houses to protect the government's interest in the collateral.

$79,836. Subsequently, the county supervisor made additional recalculations of the Kinions' net recovery value, and on September 9, 1989, recalculated the net recovery value of the Kinions' farm, including the insurance proceeds,[5] to be $306,365. Finally, on November 15, 1989, the state director approved and authorized the buyout in the amount of $306,365.

The Kinions have rejected this recalculation and maintain that the FmHA is bound by the county supervisor's March 3, 1989 calculations that set the net recovery value at $79,836. They filed a declaratory judgment action seeking to establish that the FmHA was bound by its March 3, 1989 calculations and that the FmHA's later calculations were invalid. The district court granted the government's summary judgment motion, denied the Kinions' summary judgment motion, and held that (1) the March 3, 1989 calculations did not bind the FmHA because the state supervisor had not approved the buyout, and (2) the later FmHA calculations were valid. The Kinions timely appealed.

## II. DISCUSSION

This case involves interpretation of the regulations implementing the debt restructuring and loan servicing provisions of the Act. Specifically, we must determine whether the FmHA was bound by its March 3, 1989 calculations of the net recovery value of the Kinions' farm. The Kinions argue that the March 3, 1989 calculations bound the FmHA because (1) the county supervisor had proper authorization under the FmHA regulations to accept a buyout, and (2) the FmHA could only consider information "in existence and of record" within sixty days of their request for loan servicing. We disagree.

### A. Standard of Review

■■ This court reviews the grant and denial of summary judgment motions de novo. *Bannum, Inc. v. City of St. Charles*, 2

F.3d 267, 270 (8th Cir.1993). We note that agency action is "entitled to a presumption of regularity," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971), and that this court can "overturn the ... [agency's] decision only if it f[inds] that decision to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law,'" *First Nat'l Bank v. Smith*, 508 F.2d 1371, 1373 (8th Cir.1974) (quoting 5 U.S.C. § 706(2)(A) (1988)), *cert. denied*, 421 U.S. 930, 95 S.Ct. 1655, 44 L.Ed.2d 86 (1975). Further, our review of an agency's interpretation of its own regulations "is a narrow one, deferential to the agency's interpretation ... and only permitting reversal if the agency action is without a rational basis." *Missouri v. United States Dep't of Educ.*, 953 F.2d 372, 375 (8th Cir.1992); *see also Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984); *Parker v. United States Dep't of Agric.*, 879 F.2d 1362, 1365 (6th Cir.1989) (analyzing action by the FmHA and stating that "[a] court should defer to an agency's interpretation of its own regulations so long as that interpretation is reasonable").

### B. Debt Restructuring and Loan Servicing

The objectives of debt restructuring and loan servicing under the Act are two-fold: to keep farmers who are delinquent on their FmHA loan payments in farming, and to minimize the loss to the government from delinquent FmHA loans. 7 U.S.C. § 2001(a) (1988). When a farmer is delinquent in his FmHA loan, Congress has empowered the FmHA with a series of loan restructuring tools to further the Act's goals.[6] The specific procedures at issue in this appeal are writedown and buyout.

When the government authorizes a "writedown" of a delinquent farmer's loan, it for-

---

5. The Kinions could only use the insurance proceeds to rebuild the poultry houses or to reduce the debt owed to the government. *See* 7 C.F.R. § 1806.5(b)(1) (1989). The Kinions decided not to rebuild the poultry houses.

6. The FmHA may: (1) consolidate, reschedule, or reamortize the farmer's loans; (2) reduce the interest rate on the loans; or (3) restructure the loans including deferral or writing-down the principal or accumulated interest charges. 7 C.F.R. § 1951.906 (1989).

gives a portion of the principal or accumulated interest on the loan. 7 C.F.R. § 1951.906 (1989). Before the FmHA issues a write-down, the farmer must first submit a farm plan that predicts his future income and expenses. 7 U.S.C. § 2001(b)(3). The FmHA can write-down the farmer's debt to a level where the farmer can meet the new restructured loan obligations and also have sufficient income to pay living and farm operation expenses.

In order to minimize the loss to the government, the FmHA must calculate the present value of the loan payments under the write-down plan before authorizing the write-down. *Id.* § 2001(c)(3). The FmHA then must compare the present value of the loan payments under the proposed write-down with the net recovery value of the collateral, *i.e.*, the net recovery to the government if it instituted involuntary liquidation proceedings. *Id.* § 2001(c)(5), (c)(6). If the present value of the loan payments under the proposed write-down is greater than the net recovery value, the FmHA authorizes a write-down of the farmer's debt. *Id.* § 2001(c)(5). If, however, the net recovery value is greater than the present value of the loan payments under the proposed write-down, that is—there is more money available to the government if FmHA forecloses on the farmer's collateral than if the loan is written down—the farmer is ineligible for a write-down. *Id.* § 2001(b)(4). Rather, the FmHA will give the farmer an opportunity to pay the net recovery value—a buyout—before the FmHA forecloses on the collateral. *Id.* § 2001(c)(6); 7 C.F.R. § 1951.909(h)(3) (1989). When the farmer pays the FmHA the net recovery value, this payment is referred to as a buyout. *Id.* § 1951.-909(h)(3)(iv). If the farmer pays the FmHA the net recovery value, the FmHA will forgive the balance of the farmer's loans. 7 U.S.C. § 2001(c)(6).

A buyout is the least attractive alternative for the government because it results in the maximum loan forgiveness and financial loss to the government. Neither party disputes that the FmHA regulations require state supervisor approval of any proposed write-down. The parties dispute whether the state supervisor also must approve a buyout of a farmer's loan when write-down is not feasible.

## C. Authorization of a Buyout

█ The FmHA has adopted regulations that implement the loan servicing program of the Act. The regulations define the relevant terms and set out the procedures by which the FmHA will make debt restructuring and loan servicing decisions. Specifically, § 903(b) states:

> *Authorities.* All loan servicing decisions will be made by the County Supervisor except write-down of a borrower's debt. County Supervisors are authorized to accept a buyout when the borrower(s) pay the net recovery value of the FmHA security set forth in § 1951.909. Only State Directors are authorized to approve write-down of a borrower's debt. This includes debt written down when buy out [sic] at net recovery value takes place....

7 C.F.R. § 1951.903(b) (1989). The regulations also define write-down as "reduc[tion of] a borrower's debt in an amount that will result in a feasible plan of operation." *Id.* § 1951.906.

The Kinions rely on the FmHA regulations to support their contention that they did not require authorization from the state supervisor for the buyout of their loan. If read in isolation, two sentences in 7 C.F.R. § 1951.-903(b) support their argument. Specifically, the Kinions rely on the following:

> All loan servicing decisions will be made by the County Supervisor except write-down of a borrower's debt. The County Supervisors are authorized to *accept* a buyout when the borrower(s) pay the net recovery value of the FmHA security....

*Id.* (emphasis added). The Kinions argue that a buyout is not a "write-down" and therefore the county supervisor has authority to accept the buyout. The Kinions' interpretation, however, is neither the most nor the only reasonable interpretation available.

The FmHA argues that its regulations establish that only a state supervisor may approve a buyout. The FmHA also relies on 7 C.F.R. § 1951.903(b):

Only State Directors are authorized to approve write-down of a borrower's debt. *This includes debt written down when buy out [sic] at net recovery value takes place.*

*Id.* (emphasis added). The FmHA argues that this language explicitly states and establishes that only the state director can approve a buyout at net recovery value. The FmHA distinguishes between the words accept and approve, arguing that a county director may *accept* the buyout transaction from a farmer once the state supervisor has *approved* the buyout.

The structure of the FmHA's regulations supports the agency's interpretation. Under the regulations, the county supervisor has limited authority to make loan servicing decisions. *Id.* The county supervisor unilaterally can approve, only one time, procedures that involve the least risk of loss to the government such as loan consolidation, rescheduling, or reamortization. *Id.* The district director—a position of higher authority than county supervisor—must approve in writing any subsequent use of these procedures. *Id.* Write-down, which involves a greater financial loss to the government, can be approved only by the state supervisor and never can be approved by the county supervisor. This authorization scheme systematically requires authorization by persons in higher positions of authority when the loan servicing procedures result in greater financial loss to the government. When the government approves a buyout of a farmer's loan at the net recovery value, this procedure involves the greatest loss to the government, *see* 7 U.S.C. § 2001(c)(6), and therefore, it is reasonable that the FmHA should require

approval by an employee with greater authority than the county supervisor.[7]

Our review of an agency's interpretation of its own regulations "is a narrow one, deferential to the agency's interpretation ... and only permitting reversal if the agency action is without a rational basis." *Missouri v. United States Dep't of Educ.*, 953 F.2d at 375. Because "[a] court should defer to an agency's interpretation of its own regulations so long as that interpretation is reasonable," *Parker*, 879 F.2d at 1365, and because we find the FmHA's interpretation of its regulations requiring state supervisor approval of a buyout to be reasonable, we hold that the county supervisor's March 3, 1989 calculations did not bind the FmHA because they lacked the state supervisor's approval.

## D. Sixty–Day Time Limitation

The Kinions also argue that 7 U.S.C. § 2001(c)(4) requires the FmHA to make its debt restructuring and loan servicing decisions within sixty days of the borrower's request for review.[8] The Kinions conclude that the FmHA, by statute and by its own regulations, could only act based on information in existence and of record on March 3, 1989, *i.e.*, within sixty days of the Kinions' January 4, 1989 request for loan servicing.[9] The Kinions argue that FmHA action taken based on information acquired after this sixty-day period is contrary to the statute and therefore constitutes action that is arbitrary, capricious, and not in accordance with the law. *See* 5 U.S.C. § 706(2)(A).

We have determined that the FmHA's March 3, 1989 calculations did not bind the FmHA. Therefore, the FmHA did

---

7. The FmHA also points to the form which the Kinions received informing them of the net recovery value of their farm that requires the state supervisor's signature. The state supervisor never signed the Kinions' form. *See* Appellant's Br. at 43. This demonstrates that the FmHA's interpretation is consistent with prior administrative practice and not merely a "litigating position." *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212, 109 S.Ct. 468, 473, 102 L.Ed.2d 493 (1988).

8. The statute states:

   **Notification**

Within 60 days after receipt of a written request for restructuring from the borrower, the Secretary shall
   (A) make calculations [recovery value and the value of the restructured loan];
   (B) notify the borrower in writing of the results of such calculations; and
   (C) provide documentation for the calculations.
7 U.S.C. § 2001(c)(4).

9. This interpretation necessarily excludes the information regarding the snow and ice storm, the collapse of the poultry houses, and the $264,000 of insurance proceeds received by the Kinions.

not provide the information required by statute to the Kinions within the specified time period.[10] The issue before us is what are the consequences to the FmHA when it does not meet the mandatory deadline set out in 7 U.S.C. § 2001(c)(4).[11] Specifically, we must decide whether the FmHA's failure to conform with a statutory procedural requirement divests the agency of its jurisdiction to act.

In *Brock v. Pierce County,* the Supreme Court stated: "We would be most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action, especially when important public rights are at stake." 476 U.S. 253, 260, 106 S.Ct. 1834, 1839, 90 L.Ed.2d 248 (1986). Applying this standard, courts of appeals have refused to divest agencies of jurisdiction for failure to act within a mandatory time frame. *See, e.g., Marshall Durbin Food Corp. v. ICC,* 959 F.2d 915, 919 (11th Cir.1992) (holding that ICC's failure to review ALJ's preliminary decision within mandatory review period did not divest ICC of authority to reverse ALJ decision); *Lowell Consortium v. United States Dep't of Labor,* 893 F.2d 432, 433 n. 3 (1st Cir.1990) (allowing agency to recover funds almost five years after 120–day mandatory period had expired); *City of Camden v. United States Dep't of Labor,* 831 F.2d 449, 451 (3d Cir. 1987) (allowing agency to recover funds six years after 120–day mandatory period had expired).

The statutory scheme adopted by Congress does not specify any consequences to the FmHA for non-compliance with the statutory time period. In addition, § 2001(a) requires that "[t]he Secretary shall modify delinquent farmer program loans ... to the maximum extent possible (1) to avoid loss to the Secretary ...; and (2) to ensure that borrowers are able to continue farming or ranching operations." Removing jurisdiction from the FmHA if it fails to act within sixty days furthers neither of these objectives and endangers the public's interest in minimizing financial loss to the government. *See Brock,* 476 U.S. at 262, 106 S.Ct. at 1840. We are reluctant to curb the FmHA's substantive authority in light of the Supreme Court's precedent "declining to restrict agencies' powers when Congress has not indicated any intent to do so." *Linemaster Switch Corp. v. EPA,* 938 F.2d 1299, 1304 (D.C.Cir.1991) (declining to divest the EPA of jurisdiction because it did not meet a statutory deadline) (citing *Brock,* 476 U.S. at 260, 106 S.Ct. at 1839).

Although we cannot countenance agency disregard for mandatory statutory procedures, in this case, where the FmHA delay resulted in part from an independent act of God, we hold that the FmHA did not lose jurisdiction after the sixty-day period. Therefore, we hold that the FmHA's recalculations of the net recovery value using information gained after the sixty-day period was not improper.

## III.  CONCLUSION

Accordingly, we affirm the judgment of the district court.

11. The Kinions also argue that if the FmHA can authorize a buyout after the 60–day period, it must turn a blind eye to information gained outside the 60–day period. If, for example, the Kinions had not insured the poultry houses, the argument they advance would prohibit the FmHA from considering their losses in determining the net recovery value of their farm.