Paul G. SCHMIDT; Pauline B. Schmidt; Paul A. Schmidt; Acro Corporation, Appellants,

v.

Mike ESPY, Secretary, U.S. Department of Agriculture, Appellee.

No. 93–1625.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1993.

Decided Nov. 19, 1993.

---

Harry E. McDermott, Fayetteville, AR, argued, for appellants.

Raymond Fullerton, Washington, DC, argued (J. Michael Fitzhugh, U.S. Atty., Matthew W. Fleming, Asst. U.S. Atty., and Leslie K. Lagomarcino, Office of the General Counsel, on the brief), for appellee.

Before JOHN R. GIBSON, FAGG, and BEAM, Circuit Judges.

FAGG, Circuit Judge.

Paul G. and Pauline B. Schmidt (the senior Schmidts) and their son, Paul A. Schmidt, farm in Washington County, Arkansas. The senior Schmidts built their dwelling on the farm. Nearly twenty years ago, the family formed Acro Corporation to operate the farm. The senior Schmidts and their son each own half of the corporation, which they treat as a Subchapter S corporation for tax purposes. The senior Schmidts, their son, and the corporation (collectively the Schmidts) had Farmers Home Administration (FmHA) loans secured by livestock, equipment, the senior Schmidts' dwelling, and farmland. After the Schmidts breached their loan agreement, the FmHA notified the Schmidts it intended to call their loans.

On April 14, 1989 the Schmidts applied for primary loan servicing, leaseback/buyback, and homestead protection. *See* 7 C.F.R. § 1951.906 (1993) (defining FmHA loan servicing programs). The FmHA county supervisor denied the Schmidts' request for primary loan servicing because their improper disposal of cattle pledged as collateral was in bad faith. Several months later, the county supervisor held the Schmidts' bad faith barred their request for leaseback/buyback. The county supervisor also held the senior Schmidts were ineligible for homestead protection because they did not receive any income from their farming operation. The county supervisor's decisions were affirmed throughout the Department of Agriculture's administrative appeals process and by the district court. The Schmidts appeal. We affirm in part and reverse in part.

■ On appeal, the Schmidts do not dispute the county supervisor's holding that they acted in bad faith and thus are ineligible for primary loan servicing. The Schmidts contend, however, that the Secretary failed to follow his own regulation when he denied leaseback/buyback based on their bad faith. The Schmidts assert the county supervisor's earlier bad faith finding on their request for primary loan servicing is not applicable to their request for leaseback/buyback because 7 C.F.R. § 1951.911(a)(4)(i) (1993) makes clear that good faith is required only for leaseback/buyback applications made after November 28, 1990. According to the Secretary, the Schmidts' reliance on the regulation is misplaced. The Secretary contends subpart (A) of the regulation bars the Schmidts' request. *See id.* § 1951.911(a)(4)(i)(A) (earlier bad faith determination made in connection with primary servicing binds request for leaseback/buyback). With both parties relying on different provisions of the same regulation, we cannot say the Secretary's interpretation of the regulation "is without a rational basis." *See Missouri Dep't of Social Servs. v. United States Dep't of Educ.,* 953 F.2d 372, 375 (8th Cir.1992). Indeed, in their briefing for this appeal, the Schmidts do not challenge the Secretary's reading of subpart (A). We thus defer to the Secretary's interpretation of the regulation and affirm the Secretary's denial of the Schmidts' request

for leaseback/buyback. *See Kinion v. United States*, 8 F.3d 639, 641 (8th Cir.1993) (court of appeals may overturn Secretary's decision only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law").

■ The senior Schmidts also challenge the Secretary's holding that they are ineligible for homestead protection. During at least two of the six years before their application, the senior Schmidts must have received gross farm income reasonably comparable with similar local farms and at least sixty percent of their gross income must have come from farming. *See* 7 U.S.C. § 2000(c)(1)(B), (C) (1988). The senior Schmidts contend their half of Acro Corporation's 1983 and 1984 gross farm income satisfies these requirements. There is no dispute Acro Corporation had gross farm income of over $800,000 in 1983 and over $1,000,000 in 1984. The Secretary takes the position, however, that a Subchapter S corporation like Acro Corporation must have distributable net income before the corporation's shareholders derive any income from the farming operation. The Secretary thus concluded the senior Schmidts received no income from the farm operation during 1983 and 1984 because their corporation suffered net losses.

We agree with the Secretary's decision to consider the senior Schmidts' application for homestead protection. Although the senior Schmidts are well into their eighties and their son operated the farm during the years in question, the senior Schmidts are bona fide farmers who have earned their livelihood from family farming and lived on the farm for many years. We also agree with the Secretary's decision to examine the family farming corporation's operations to measure the senior Schmidts' farm income. Like the Secretary, we believe the senior Schmidts should not be barred from homestead protection because their farm is operated by a Subchapter S family farming corporation. In applying the eligibility requirements for homestead protection to the senior Schmidts, however, the Secretary failed to apply the statutory "gross farm income" requirement when he based his eligibility decision on the corporation's failure to turn a profit rather than the corporation's gross revenues from farming. Congress has not limited homestead occupancy to borrowers with profitable farm operations. Because it is unlikely that borrowers who seek homestead protection on foreclosure have enjoyed profitable farming operations, the Secretary's bottom-line analysis would deny many operators of financially distressed family farming corporations the opportunity to "retain their dwelling through a lease and/or purchase." 7 C.F.R. § 1951.-911(b)(1) (1993). We thus conclude the senior Schmidts are entitled to have their eligibility for homestead protection measured by their share of the corporation's gross farm income.

We affirm the Secretary's denial of the Schmidts' request for leaseback/buyback and remand to the district court with instructions to remand to the Secretary for further consideration of Paul G. and Pauline Schmidt's application for homestead protection.