**HUDSON STATIONS, INC., Appellant,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Appellee.**

No. 80–1830.

United States Court of Appeals, Eighth Circuit.

Submitted March 6, 1981.

Decided March 12, 1981.

this Lease, the prevailing party shall be entitled to attorneys' fees and costs, all as adjudged reasonable by the Court.

Angus MacBeth, Acting Asst. Atty. Gen., Donald W. Stever, Jr., Nancy J. Marvel, Attys., Dept. of Justice, Washington, D.C., for appellee.

Hentzen, Moore & Willy, Joseph H. Moore and Mark R. Schmid, Kansas City, Mo., of counsel for petitioner, Hudson Stations, Inc.

Before HEANEY, ROSS and ARNOLD, Circuit Judges.

ARNOLD, Circuit Judge.

Hudson Stations, Inc. has petitioned this Court for review of a final order of the Regional Administrator of the Environmental Protection Agency for Region VII. Specifically, the petitioner challenges the dollar amount of a civil fine levied against it for violation of 40 C.F.R. § 80.22(f)(1) promulgated by the E.P.A. under the authority of § 211(c) of the Clean Air Act, 42 U.S.C. § 7545(c). This Court's jurisdiction rests on 42 U.S.C. § 7607(b)(1).

On June 2, 1977, a Fuel Inspector for the E.P.A. inspected a gasoline station owned by Hudson Stations, Inc., at 1200 Central, Kansas City, Kansas. He found that one of the station's leaded gasoline pumps was equipped with a nozzle intended for use on an unleaded gasoline pump. The Enforcement Division of the E.P.A. thereafter issued a complaint against Hudson Stations alleging a violation of 40 C.F.R. § 80.-22(f)(1).[1] After a hearing on May 2, 1978, the Presiding Officer issued an Initial Decision finding that Hudson Stations had violated the regulation and assessing a civil penalty against Hudson of $3,000.00. On May 7, 1980, the Regional Administrator issued a Final Order adopting the findings and conclusions of the Presiding Officer. After the filing and denial of Hudson's Motion to Rehear, Reargue, or Reconsider, this petition for review was timely filed.

---

1. 40 C.F.R. § 80.22(f) reads in pertinent part:

   (f) After July 1, 1974 every retailer shall equip all gasoline pumps, and after January 31, 1975 every wholesale purchaser-consumer shall equip all gasoline pumps as follows:

   (1) Each pump from which leaded gasoline is introduced into motor vehicles shall be equipped with a nozzle spout having a terminal end with an outside diameter of not less than 0.930 inch (2.363 centimeters).

On appeal Hudson does not question the Regional Administrator's finding of liability. The sole question presented is the appropriateness of the dollar amount of the penalty imposed.

The E.P.A.'s authority for the regulation of the sale of leaded gasoline is found in 42 U.S.C. § 7545(c). Subsection (d) sets a civil penalty of $10,000 for each day of violation of any regulation promulgated under section (c). The Administrator of the agency, or his designee, has the additional authority to mitigate or remit any penalty assessed under this section. He is also empowered to determine the facts upon all such applications for remission or mitigation.

■ The procedural rules governing administrative proceedings to assess civil penalties under section 211(d) of the Act are codified in 40 C.F.R. Part 80, Subpart D—Rules for Assessment of Civil Penalties (1978).[2] If the Presiding Officer determines, after a hearing if requested, that liability has been established, he is directed to use the following guidelines in setting a proposed civil penalty:

> (b) *Evaluation of proposed civil penalty.* In determining the dollar amount of the recommended civil penalty assessed in the initial decision, the Presiding Officer shall consider all elements regarding the appropriateness of a civil penalty set forth in § 80.330(b). In determining the appropriate penalty to be assessed, the Presiding Officer may consult and rely upon the Guidelines for the Assessment of Civil Penalties, published as a Notice in the *Federal Register* of August 29, 1975, as part of the Part II. The Presiding Officer may at his discretion increase or decrease the assessed penalty from the amount proposed to be assessed in the complaint.

40 C.F.R. § 80.327(b). Additional guidance is found in § 80.330(b)(1):

> (1) In evaluating the appropriateness of such proposed penalty, the Regional Administrator must consider (i) the gravity of the violation, (ii) the size of respondent's business, (iii) respondent's history of compliance with the Act, (iv) the action taken by respondent to remedy the specific violation, and (v) the effect of such proposed penalty on respondent's ability to continue in business.
>
> (2) In determining the appropriate penalty to be assessed, the Regional Administrator may consult and rely upon the Guidelines for the Assessment of Civil Penalties, published as a Notice in the *Federal Register* of August 29, 1975, as part of the Part II. The Regional Administrator may, at his discretion, increase or decrease the assessed penalty from the amount recommended to be assessed in the initial decision, or in the Guidelines for the Assessment of Civil Penalties.

The scope of a court's review of the assessment of a civil penalty under the Clear Air Act is limited. The Regional Administrator's decision must stand unless her decision is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Oljato Chapter of Navajo Tribe v. Train*, 515 F.2d 654 (D.C.Cir.1975).

■ Petitioner Hudson Stations, Inc., questions the Regional Director's decision on two bases. Hudson's first claim is that the Director impermissibly "pierced the corporate veil" in setting the $3,000.00 penalty. Hudson Stations, Inc., owns and operates 16 retail service stations. The corporation is one of six corporations with interlocking officers and employees which, in the aggregate, operate 294 gasoline stations. The four controlling stockholders of the six corporations are all related by blood or marriage, and all six corporations operate out of one office under the name of Hudson and Affiliated Companies.

This first argument amounts to a contention that it was an abuse of discretion for the Administrator to consider the six interlocking corporations in applying the "size of business" criterion when evaluating the

---

**2.** These procedural rules have now been superseded by the Consolidated Rules of Practice Governing the Administrative Assessment of Civil Penalties and the Revocation or Suspension of Permits, 40 C.F.R. Part 22 (1980). The earlier rules govern this appeal.

proposed penalty. We do not think that the Administrator actually "pierced the corporate veil" in this case. She did not do so, at least, in the sense of holding individual officers liable for corporate acts or holding the other corporations responsible for the acts of Hudson Stations, Inc. See *Donsco, Inc. v. Casper Corp.,* 587 F.2d 602, 606 (3d Cir. 1978); *Bruhn's Freezer Meats v. United States Dept. of Agriculture,* 438 F.2d 1332 (8th Cir. 1971). The Administrator described Hudson Stations' relationship with its sibling corporations as follows:

> The corporate organizations and individuals, including Respondent Hudson Stations, Inc., are at the very least agents of one another carrying out a common enterprise; i. e., the marketing of petroleum products including leaded and unleaded gasoline through a large network of retail stations with gross annual revenues far exceeding the $7 million shown for Respondent for the applicable fiscal year, and the matter will be so viewed in determining an appropriate civil penalty.

We do not agree that the Administrator abused her discretion by considering the total corporate structure of the Hudson companies in assessing the penalty. First, the size of the business was only one of several factors considered in assessing the penalty. Second, the penalty is not so large that it could not have been assessed against a corporation the size of Hudson Stations, Inc., alone when other factors are taken into consideration.[3]

■ Hudson Station's second argument for reversal is that the Administrator used the wrong definition for "size of business—gross income" in assessing the penalty from the penalty chart.[4] To support its contention that the Director used the wrong figure, Hudson cites her reference to Hudson Stations' $7 million dollar gross annual revenue. The problem with Hudson's argument is that under the penalty chart, if one uses Hudson Stations' own definition of gross income ($707,000 profit after deduction of cost of goods sold), the recommended penalty is exactly $3,000.00. If the $7 million dollar gross income figure were used, the recommended penalty would be at least $7,000.00.[5] There was no abuse of discretion in assessing the amount of this penalty.

We have examined the transcript of the hearing in which Hudson Stations offered testimony to show that the penalty would cause economic hardship for the corporation. It was not an abuse of discretion to assess the $3,000.00 penalty in light of Hud-

3. The Presiding Officer's Initial Decision as adopted by the Administrator specifically addresses two other factors used in determining the size of the penalty. The decision reads:

> In view of the gravity of the violation, the history of previous non-compliance of Respondent, and other facts and circumstances in the matter, I recommend that Respondent be assessed a civil penalty of $3,000.

The Presiding Officer also noted that the installation of the unleaded nozzle "had to be the deliberate act of a person connected with the operation of the station, hence an agent of Respondent Corporation." The Presiding Officer also considered, as directed by the regulations, the fact that an identical violation had occurred at the same station one year before. "The repetition of the violation gives rise, in this type of violation where accident is unlikely to figure in the offense, to the possibility of a scofflaw attitude by some person or persons working for Respondent corporation."

4. The penalty chart is found in the Guidelines for the Assessment of Civil Penalties at 40 Fed.Reg. 39,976 (1975).

5. The Administrator's decision makes no reference to the penalty chart at all, and its use is discretionary only. 40 C.F.R. § 80.330(b)(2). The original complaint against Hudson Stations filed by the Enforcement Division did make use of the chart. That complaint proposed a $3,000.00 penalty "based on the penalty assessment schedule published in the Federal Register of August 29, 1975." The complaint further stated that the amount of the penalty was appropriate because of the gravity of the offense and the size of Hudson Stations' business, determined to be in Category II. Category II businesses as defined at 40 Fed.Reg. 39,975 (1975) include businesses whose gross income ranges from $250,000 to $1,000,000 per year. Hudson's gross income of $707,000 places it in Category II. The $3,000.00 penalty is the lowest penalty recommended by the penalty-assessment schedule, if Hudson's own definition of gross income is used.

son's testimony that although the penalty would be burdensome its assessment would not adversely affect Hudson Stations' ability to continue in business.

The decision of the Regional Administrator is affirmed.