PANHANDLE COOPERATIVE ASSOCIATION, BRIDGEPORT, NEBRASKA, Petitioner,

v.

ENVIRONMENTAL PROTECTION AGENCY, Respondent.

No. 84-2508.

United States Court of Appeals, Eighth Circuit.

Submitted May 17, 1985.

Decided Aug. 30, 1985.

Robert C. Guenzel, Lincoln, Neb., for petitioner.

Charles E. DiLeva, U.S. Dept. of Justice, Washington, D.C., for respondent.

Before BRIGHT, Senior Circuit Judge, and ROSS, and JOHN R. GIBSON, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

The Panhandle Cooperative Association appeals from an order of the Environmental Protection Agency assessing a $5,000 penalty against it for mislabeling a tank of the pesticide Telone II in violation of the Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C. § 136–136y (1982) (FIFRA). Panhandle argues that the assessment of the penalty was arbitrary, capricious and an abuse of discretion and that a two and one-half year delay in the decision of its administrative appeal violated statutory and regulatory requirements. We affirm.

A complaint was issued by EPA's Enforcement Division alleging that Panhandle had failed to attach a label to a bulk tank of Telone II and that the tank was misbranded in violation of 7 U.S.C. §§ 136j, 136q, and 40 C.F.R. § 162.10(e) (1981). The complaint alleged that the only labeling on the container was the word "Telone" and that Panhandle was holding the pesticide for sale in small quantities. A $5,000 penalty was requested.

The case was submitted to an administrative law judge on stipulations. A 4,000 gallon bulk tank containing Telone II was marked simply "Telone II." The chemical was dispensed from the tank into customers' barrels, usually fifty-five gallon drums. Each customer was given an EPA-approved specimen label. Panhandle further stipulated that the $5,000 civil penalty was properly proposed in accordance with the limit in 7 U.S.C. § 136l (a)(1) (1982), although the civil penalty guidelines in 39 Fed.Reg. 27,771 (1974) would have resulted

in a higher proposed penalty.[1] The EPA was unaware of any previous violations of FIFRA by Panhandle, and after receiving the complaint, Panhandle properly labeled the bulk storage container. Panhandle had over $1,500,000 in working capital, and annual sales in the fiscal year of the violation in excess of $35,000,000. It stipulated that a $5,000 penalty would not affect its ability to continue in business.

The ALJ's order recited the contents of the stipulation, the contentions of the parties and stated the applicable law, 7 U.S.C. § 136*l* (a)(4) (1982). This section provides:

In determining the amount of the penalty, the Administrator shall consider the appropriateness of such penalty to the size of the business of the person charged, the effect on the person's ability to continue in business, and the gravity of the violation. Whenever the Administrator finds that the violation occurred despite the exercise of due care or did not cause significant harm to health or the environment, the Administrator may issue a warning in lieu of assessing a penalty.

In addition, regulations required that the presiding officer consider the respondent's history of compliance with the Act, evidence of good faith (or lack thereof), and the agency's guidelines for assessment of civil penalties in 39 Fed.Reg. 27,711 (1974). 40 C.F.R. § 22.35(c) (1981).

The ALJ observed the stipulation that the $5,000 penalty was properly assessed in terms of the size of the business and would not adversely affect Panhandle's ability to stay in business. He then stated:

As to gravity of misconduct I conclude that the violation was not of a high order but is nevertheless an admitted violation

of the Act done so with the knowledge of what the law requires.

As to the gravity of harm, although no actual injury to the environment or the health of the persons has been alleged, certainly in view of the hazardous nature of the product, the potential for harm is extremely high.

R. 27. He concluded:

Apparently this pesticide is extremely dangerous when not used properly or when certain safe-guards for its handling are not observed. Under the circumstances of this case taking into consideration all the factors required by Law and regulation to be considered, I am of the opinion that the $5,000.00 penalty proposed by the Complainant is reasonable under the circumstances. In coming to that conclusion I have also taken into consideration the past history of the Respondent in complying with the Act and also with its prompt curing of the violation set forth in the Complaint by placing the required label on the 4,000 gallon storage tank.

*Id.* at 27–28.

On March 3, 1982, Panhandle appealed the decision to the EPA. On September 28, 1984, the Chief Judicial Officer issued a final decision that adopted the findings of fact, conclusions of law, and reasons of the ALJ. He noted that the only question resolved by the ALJ was the amount of the civil penalty to be assessed. The order set forth the applicable regulations and statutes, the contentions of the parties, and concluded with the words "I agree." The decision was not signed by the judicial officer but by someone on his behalf.[2]

.I.

The scope of our review is very narrow. If the order is supported by sub-

---

1. Two of the alleged violations, failure of the tank to bear directions for use and failure to bear warning or caution statements, carried penalties of $2,800 under the guidelines. The other violations alleged, failure to bear the name and address of the producer, and failure to bear the net weight or measure of content and failure to bear the EPA registration number, carried a penalty of $1200.

2. Panhandle contended at oral argument that this constituted an improper delegation by the EPA administrator. The issue was not briefed, however, so we need not consider it. *Jasperson v. Purolator Courier Corp.,* 765 F.2d 736, 740 (8th Cir.1985); Fed.R.App.P. 28(a).

stantial evidence, it must be upheld. 7 U.S.C. § 136n(b) (1982); *see* 5 U.S.C. § 706(2)(E) (1982). The assessment of a penalty is particularly delegated to the administrative agency. Its choice of sanction is not to be overturned unless "it is unwarranted in law" or "without justification in fact." *Butz v. Glover Livestock Commission Co.,* 411 U.S. 182, 185–86, 93 S.Ct. 1455, 1458, 36 L.Ed.2d 142 (1973). The assessment is not a factual finding but the exercise of a discretionary grant of power. *Beall Construction Co. v. Occupational Safety & Health Review Commission,* 507 F.2d 1041, 1046 (8th Cir.1974). The ALJ recited the proper penalty criteria. The gravity of the offense is the only matter disputed, for the size of the business and the effect of the proposed penalty were stipulated.

■ The ALJ carefully reviewed the stipulated facts, including the labels and photographs, in considering the gravity of the violation. Substantial evidence supports his findings and we cannot conclude that the penalty imposed was an abuse of discretion. Panhandle minimizes the seriousness of the violation by arguing that proper labels were given to the farmers purchasing the chemical. Nevertheless, the ALJ found that "the potential for harm [was] extremely high" and that when the purchasers were given the required label "it is likely that by that time it is too late to take the required precautions since during the dispensing and drum filling process both the pruchaser (sic) and the sales person are exposed to quite serious hazards presented by this pesticide." R. 25–26. Accordingly, we cannot say that the agency abused its discretion. *See Aero-Master, Inc. v. United States Environmental Protection Agency,* 765 F.2d 746, 747 (8th Cir. 1985) (per curiam); *B.L. Anderson, Inc. v. Federal Mine Safety & Health Review Commission,* 668 F.2d 442, 443–44 (8th Cir. 1982); *Hudson Stations v. United States Environmental Protection Agency,* 642 F.2d 261 (8th Cir.1981).

## II.

■ Panhandle also argues the EPA's final action was unlawfully dilatory. EPA regulations require that "the administrator shall issue a final order as soon as practicable after the filing of all appellate briefs." 40 C.F.R. § 22.31 (1984). The Administrative Procedure Act provides: "With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b) (1982). Panhandle argues that the lapse of two and one-half years between the filing of the final brief and the issuance of a final order contravened these requirements. The EPA argues that Panhandle has not shown it would have been "practicable" to issue the final decision any sooner or that the delay was prejudicial.

Our review of the agency's action is limited to evidence of record. 7 U.S.C. § 136n(b); Fed.R.App.P. 16. It is difficult to evaluate the merits of Panhandle's argument because it has failed to make a record on the issue of delay. Outside of the allegations in Panhandle's brief, nothing presented to this court or the agency (other than the mere passage of time) provides a basis for finding that the delay was unreasonable or that speedier resolution would have been practicable. The reason that the record is barren on this point is Panhandle never raised the delay issue before the EPA, either while the decision was pending or after it was released. *See* 40 C.F.R. § 22.32 (1984).[3]

■ On the record before us, we cannot sustain Panhandle's position. Without any indication of the agency's workload or the importance of Panhandle's appeal in relation to other matters before the EPA, there is no basis to find the agency violated its regulation on timeliness. *See generally* Goldman, *Administrative Delay and Judicial Relief,* 66 Mich.L.Rev. 1423, 1424–31

---

**3.** Nor did Panhandle seek timely judicial intervention to expedite the agency's decision-making process, as provided for in 5 U.S.C. § 706(1) (1982).

(1968) (discussing merits of various reasons for administrative delay). Similarly, the proof is insufficient to demonstrate a violation of section 555(b). Before an agency action may be set aside for lack of punctuality, the aggrieved party must show that it was prejudiced by the delay. *Estate of French v. Federal Energy Regulatory Commission*, 603 F.2d 1158, 1167 (5th Cir. 1979). Panhandle asserts that the EPA's delay may have injurious consequences with regard to allocating the penalty to cooperative members in the appropriate tax periods. This argument is not compelling. Moreover, Panhandle has obviously benefited from the delay, which has deferred its obligation to pay the fine. Based on the whole record, we believe we should not invoke the "extreme sanction" of overturning the agency's decision. *National Beef Packing Co. v. Secretary of Agriculture*, 605 F.2d 1167, 1169 (10th Cir.1979); *see NLRB v. Rutter-Rex Manufacturing Co.*, 396 U.S. 258, 265–66, 90 S.Ct. 417, 421–22, 24 L.Ed.2d 405 (1969); *cf. Caswell v. Califano*, 583 F.2d 9, 18 (1st Cir.1978) (HEW administrative delay found unreasonable because claimants suffered severe hardship in being denied disability payments).

We are sympathetic to Panhandle's argument. Even though the agency has many complex statutes to administer, it is difficult to see why two and one-half years were needed to produce a perfunctory document with the adjudicatory and reasoning process represented only with the phrase "I agree." If there is to be a stricter timeliness requirement for administrative bodies, which the facts in this case might suggest would be desirable, its enactment is entrusted to the wisdom of Congress. While we are critical of the delay, we are without authority to reverse the action of the agency in this respect.