Jackie **MOORE**, individually and as the operator of Joplin Regional Stockyards, et al., Plaintiffs,

v.

Edward **MADIGAN**, Secretary of the United States Department of Agriculture, et al., Defendants.

No. 91–0029–CV–W–2.

United States District Court, W.D. Missouri, W.D.

March 30, 1992.

John L. Williams, Fields, Brown, Williams & Clark, Kansas City, Mo.

Dorothy Lewis, Kansas City, Kan.

MEMORANDUM OPINION
AND ORDER

GAITAN, District Judge.

This case is an appeal from an administrative agency decision before the Animal and Plant Health Inspection Service of the United States Department of Agriculture (USDA). Plaintiff seeks to enjoin the USDA decision to withdraw plaintiff's status as a "specifically approved stockyard" for a period of five years pursuant to Title

9, Code of Federal Regulations § 78.44 (1991). Pending before this Court are cross-motions for summary judgment.[1] Jurisdiction for this case is proper under 28 U.S.C. § 1331.

## I. THE FACTS

In 1903, Congress enacted the Cattle Contagious Diseases Act for the purpose of preventing the introduction and dissemination of contagious diseases during the transportation of livestock. The Act was codified in 21 U.S.C. §§ 101–105, 111–113, and 120–128 (1972 & Supp.1991). Pursuant to 21 U.S.C. § 111, Congress gave the Secretary of Agriculture authority to make regulations and take measures which effectuate the purpose of the Act. Pursuant to this authority, the Secretary promulgated 9 C.F.R. § 78.44 (1991), which designates and controls the operation of "specifically approved stockyards."

A "specifically approved stockyard" is defined as the "premises where cattle or bison are assembled for sale or sale purposes and which meet the standards set forth in 78.44 and are approved by the Deputy Administrator." 9 C.F.R. § 78.1 (1991). In order to obtain the status as a "specifically approved stockyard," the operator of the stockyard must execute an "agreement" set forth in either 9 C.F.R. § 78.44(c) or (d), and the operator must maintain and operate the stockyard in accordance with the standards specified in the agreement. 9 C.F.R. § 78.44(a).[2] Consequently, if the operator violates the terms of the agreement, the Deputy Administrator is given the authority to withdraw the status as a "specifically approved stockyard" upon written notice of the violations. 9 C.F.R. § 78.44(b)(2).[3] The regulation further provides that upon request the operator will be afforded an "opportunity for a hearing," and that the hearing will be conducted "in accordance with the rules of practice which shall be adopted for the proceeding." 9 C.F.R. § 78.44(b)(2).

Plaintiff Jackie Moore is the operator of the Joplin Regional Stockyards located in Joplin, Mo. The Stockyard qualified for operation as a "specifically approved stockyard" on April 13, 1987. On October 13, 1988 and May 18, 1989, inspections were conducted by the USDA at the Stockyard. In both inspection reports, the Stockyard was found to be in violation of the terms of the agreement. Specifically, the reports indicated that plaintiff failed to maintain the identity of cattle that were sold in the Stockyard, and that the Stockyard was not maintained in a sanitary condition.

On September 15, 1989, the USDA sent plaintiff a written notice indicating that the "specifically approved stockyard" status would be withdrawn. Plaintiff received a copy of the rules of practice which were adopted for the proceedings. The adopted rules of practice provided for an informal hearing. On June 25 and 26, 1990, the informal hearing was held before Frank Tang, a hearing officer and employee of the USDA. On November 7, 1990, Mr. Tang issued Findings of Fact and Conclusions which indicated that plaintiff was in violation of the terms of the agreement. Based upon these findings, the Deputy Ad-

---

1. Defendant has also filed a motion to suspend Local Rule 15 and a motion to strike. These motions will be addressed at the conclusion of this memorandum opinion.

2. 9 C.F.R. § 78.44(a) provides:
 To qualify for approval by the Deputy Administrator as a specifically approved stockyard and to retain such designation, the operator of the stockyard shall execute one of the agreements set forth in paragraphs (c) or (d) of this section and the stockyard shall be maintained and operated in accordance with the standards specified in the agreement.

3. 9 C.F.R. § 78.44(b)(2) provides:
 The Deputy Administrator may withdraw the approval of any specifically approved stockyard when the Deputy Administrator determines that the stockyard is not maintained and operated in accordance with the standards specified in the agreement. Before the Deputy Administrator withdraws approval from a specifically approved stockyard ..., the operator of the stockyard will be informed in writing of the reasons for the proposed withdrawal of approval and, upon request, shall be afforded an opportunity for a hearing with respect to the merits or validity of the action to withdraw approval if there is a dispute regarding any material fact, in accordance with rules of practice which shall be adopted for the proceeding.

ministrator issued an order on December 10, 1990 withdrawing plaintiff's "specifically approved stockyard" status for a period of five years.

Plaintiff filed the present action seeking to enjoin the USDA's decision to withdraw plaintiff's "specifically approved stockyard" status. Pending before this court is plaintiff's motion for summary judgment, defendant's cross-motion for summary judgment, defendant's motion to suspend local rule 15, and defendant's motion to strike. The court will address the cross-motions for summary judgment first.

## II. DISCUSSION

According to Rule 56(c), Fed.R.Civ.P., summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears this burden of proof. *Aetna Life Insurance Co. v. Great National Corp.*, 818 F.2d 19, 20 (8th Cir.1987). If the moving party meets the initial burden, then the nonmoving party is required to go beyond the pleadings, etc. and designate specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In reviewing the motion for summary judgment, the court must view the facts in the light most favorable to the adverse party and allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *U.S. v. Conservation Chemical Co.*, 619 F.Supp. 162, 179–80 (W.D.Mo.1985).

### A. Informal v. Formal Hearing Procedures

1. 9 C.F.R. § 78.44 and 7 C.F.R. § 1.131

■ Plaintiff filed the motion for summary judgment on the central issue that the USDA erred in adopting informal hearing procedures under 9 C.F.R. § 78.44, instead of the uniform rules of practice for formal adjudicatory proceedings set forth 7 C.F.R. § 1.131 *et seq.* (1991).[4] Plaintiff claims that the USDA was required by 7 C.F.R. § 1.131 to apply the uniform rules of practice. Plaintiff argues that the USDA's failure to apply the uniform rules of practice violated case precedent, and was inconsistent with the USDA's purpose in establishing the uniform rules of practice.

■ By attacking the USDA's decision to adopt informal procedures for the hearing, plaintiff questions the USDA's interpretation and construction of its own regulations. Although an agency's interpretation of its governing statute is a question of law which is generally subject to de novo review, an agency's interpretation of its own regulations imposes a more stringent standard of judicial review. *See City of St. Louis v. Dept. of Transportation*, 936 F.2d 1528, 1534 n. 1 (8th Cir.1991) (greater deference is given to an agency's interpretation of its own rules than of an agency's interpretation of its governing statutes); *Jones v. Federal Deposit Insurance Corp.*, 748 F.2d 1400, 1405 (10th Cir.1984) (court must give deference to the construction of a regulation by the agency that is charged with administering the regulation). In the Supreme Court decision of *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945), the Court stated that:

> [w]hen a court is called upon to construe administrative regulations the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation.

Upon review of the language in 9 C.F.R. § 78.44 and 7 C.F.R. § 1.131, the Court does not find that the USDA's construction

---

4. The Uniform Rules of Practice were promulgated by the Department of Agriculture for use in formal adjudicatory proceedings instituted by the Secretary under various statutory provisions listed in 7 C.F.R. § 1.131(a) and (b). The uniform rules of practice provide for a formal adjudicatory hearing.

of these regulations is plainly erroneous or inconsistent. Title 7, C.F.R. § 1.131 states that

> (a) The rules of practice in this subpart shall be applicable to all adjudicatory proceedings under the statutory provisions listed below as those provisions have been or may be amended from time to time ...
>
> \* \* \* \* \* \*
>
> Act of February 2, 1903, commonly known as the Cattle Contagious Diseases Act of 1903, section 3, as amended (21 U.S.C. 122).
>
> \* \* \* \* \* \*
>
> (b) Adjudicatory proceedings under the regulations promulgated under the Animal Quarantine and Related Laws (21 U.S.C. 111 *et seq.*) for the suspension or revocation of accreditation of veterinarians (9 CFR Parts 160, 161).

Plaintiff contends that because this case was brought under the Cattle Contagious Diseases Act, 21 U.S.C. § 111, defendant was required by 7 C.F.R. § 1.131 to apply the uniform rules of practice. Although 7 C.F.R. § 1.131 refers to two sections of the Cattle Contagious Diseases Act, neither of these sections were applicable in the present case. The USDA specifically limited the applicability of the uniform rules of practice to only those proceeding under the Cattle Contagious Diseases Act which impose criminal or civil penalties, or involve veterinarian accreditation. The proceeding to revoke a stockyard's "specifically approved stockyard" status does not fall within any of those categories.

Furthermore, the USDA's decision not to apply the uniform rules of practice in this case is not inconsistent with the language in 9 C.F.R. § 78.44. Section 78.44(b)(2) expressly states that the agency may adopt their own procedures to be followed in proceedings to withdraw a "specifically approved stockyard" status. It is clear that this language does not require the agency to apply the uniform rules of practice.

Plaintiff attempts to uncover an inconsistent practice by the USDA by citing several different USDA administrative adjudications which were brought under 21 U.S.C. § 111, and which apparently applied the uniform rules of practice in 7 C.F.R. § 1.131.[5] However, these cases do not offer proof of irregularity in the USDA's decision-making. None of the cases cited specifically involve the regulation at issue in this case, 9 C.F.R. § 78.44. More importantly, the USDA imposed civil penalties in those cases presumably under 21 U.S.C. § 122, which requires the application of the uniform rules of practice under 7 C.F.R. § 1.131.

This Court does not find that the USDA violated case precedent or acted incongruently with its own purpose and intent in establishing uniform rules of practice. To impose plaintiff's interpretation on the regulations would be inconsistent with the plain language of 9 C.F.R. § 78.44 and 7 C.F.R. § 1.131. Therefore, the Court finds that the USDA's adoption of informal rules of practice in this case is neither plainly erroneous or inconsistent with the USDA's regulations.

2. Administrative Procedure Act, 5 U.S.C. § 554(a)

■ Plaintiff also argues that the USDA action was inconsistent with congressional intent to provide formal adjudicatory procedures in proceedings where a penalty is assessed by an agency. Plaintiff cites several sections of the United States Code where Congress requires formal hearings "on the record" for different administrative actions involving the imposition of sanctions.[6]

---

**5.** Plaintiff also cites the decision *In re Harris,* No. 91–27 (May 1, 1991), where the Judicial Officer of the USDA stated that the uniform rules of practice were applicable to all USDA adjudicatory proceedings subject to the APA. However, the *Harris* decision does not mandate the use of the uniform rules of practice in this case because this adjudicatory proceeding is not governed by the formal hearing procedures under the APA.

**6.** *See, e.g.,* 21 U.S.C. § 104, 21 U.S.C. § 117(b), 21 U.S.C. § 122, 21 U.S.C. § 134e, and 21 U.S.C. § 135a.

■ Generally, in order to be entitled to a formal hearing under the Administrative Procedure Act, 5 U.S.C. § 554(a), the relevant statute or regulation must provide for a hearing "on the record." *Webster Groves Trust Co. v. Saxon*, 370 F.2d 381, 385 (8th Cir.1966). In this case, it is clear that Congress did not require a formal hearing under the governing statute in this case. There is no language in 21 U.S.C. § 111 which states that there must be a hearing "on the record." Additionally, there is no evidence in the legislative history of 21 U.S.C. § 111 that Congress intended to provide a formal adjudicatory hearing under these circumstances. *City of West Chicago, Ill. v. U.S. Nuclear Regulatory Commissioner*, 701 F.2d 632 (7th Cir.1983). Although Congress requires formal proceedings when criminal or civil monetary penalties are assessed under 21 U.S.C. § 122, this statute is not applicable because neither criminal or civil monetary penalties were instituted by the USDA in this case.

3. Administrative Procedure Act, 5 U.S.C. § 558(c)

■ In the cross motion for summary judgment, the defendant points out that plaintiff is not entitled to a formal adjudicatory hearing under the Administrative Procedure Act, 5 U.S.C. § 558(c). Section 558(c) provides that the withdrawal of a license is lawful only upon notice to the licensee, and an "opportunity to demonstrate or achieve compliance with all lawful requirements." Defendant claims that this section does not provide an independant right to a full adjudicatory hearing before a license is revoked. *See Gallagher & Ascher Co. v. Simon*, 687 F.2d 1067 (7th Cir.1982). Defendant states that § 558(c) only requires that plaintiff be given the opportunity to achieve compliance with the regulations.

In response, plaintiff contends that "inherent" in § 558(c) is the idea that a license cannot be suspended once the licensee brings itself into compliance with the regulations. Plaintiff has cited no authority for this proposition. The question is not whether plaintiff eventually complied with the regulations, but whether plaintiff was given the "opportunity" to comply with the regulations. In this case, plaintiff received notice on October 13, 1988 and May 18, 1989 that the Stockyard was not in compliance with the USDA regulations. From the time of the initial notice on October 13, 1988, plaintiff was given approximately seven months to cure the stated violations. The court finds that this was sufficient "opportunity" under § 558(c).

B. Notice and Comment Under the APA, 5 U.S.C. § 553

■ In addition to the above arguments, plaintiff also contends that the USDA violated the Administrative Procedure Act, 5 U.S.C. § 553 by adopting the informal rules of practice without notice and comment. Although plaintiff presents a compelling argument based upon the decision in *Air Transport Association of America v. Department of Transportation*, 900 F.2d 369 (D.C.Cir.), vacated on other grounds, —— U.S. ——, 111 S.Ct. 944, 112 L.Ed.2d 1033 (1991), the Court will not review this issue because plaintiff did not raise it during the administrative proceedings.

In *Arp v. Railroad Retirement Board*, 850 F.2d 466, 467 (8th Cir.1988), the Eighth Circuit flatly rejected review of a procedural due process claim which was not previously presented to the administrative agency. *See also Patsis v. Immigration & Naturalization Service*, 337 F.2d 733 (8th Cir.1964), *cert. denied*, 380 U.S. 952, 85 S.Ct. 1085, 13 L.Ed.2d 970 (1965); *Cf. Wentz v. Maryland Casualty Co.*, 869 F.2d 1153 (8th Cir.1989) (court allowed review of a claim which "grew out" of a similar claim raised before the administrative agency). As in the *Arp* decision, plaintiff raises an issue which could have been presented to the agency and addressed during the administrative proceedings. As a consequence, this Court will not review this claim.

C. Authority to Suspend Operations

■ Plaintiff's only challenge to the USDA's authority to suspend the "specifically approved stockyard" status is that the

suspension is contrary to the language in regulation 9 C.F.R. § 71.4(a) (1991).[7] Section 71.4(a) provides that

> Yards, pens, chutes, alleys and other facilities and premises which are used in connection with the interstate movement of livestock or poultry shall be maintained by the person in possession of the facilities and premises in a clean and sanitary condition ... When [the State inspector] determines that such facilities or premises are not in such clean and sanitary condition and gives written notice of his determination to such person, the facilities and premises shall be cleaned and disinfected ... before such premises are again used for livestock or poultry.

Plaintiff claims that this regulation only allows the USDA to suspend the operations of the stockyard until the premises are cleaned. Once the stockyard is clean and sanitary, plaintiff argues that the stockyard must be able to resume its operations.

The court disagrees with plaintiff's assertion. The USDA's decision to suspend plaintiff's "specifically approved stockyard" status under 9 C.F.R. § 78.44 was neither plainly erroneous or inconsistent with regulation 9 C.F.R. § 71.4(a). *See Bowles v. Seminole Rock Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). Section 71.4(a) does not require that a stockyard be reopened after the premises is cleaned and sanitized. The regulation only states that the stockyard must be clean "before" it can be used for livestock or poultry.

### D. The Administrative Record

■ Plaintiff claims that summary judgment in favor of defendant is improper in this case because there remains genuine issues of material fact. Specifically, plaintiff states that the affidavit of Dr. Dake,

one of the stockyard inspectors, reveals that he disagreed with some of the findings in the inspection report.

The court will not consider this affidavit because it was not submitted during the agency proceedings, and is not properly part of the administrative record on appeal. On review, the district court is not permitted to consider evidence which was not part of the administrative record unless plaintiff can show bad faith or improper behavior. *Maxey v. Kadrovach*, 890 F.2d 73 (8th Cir. 1989), *cert. denied*, 495 U.S. 933, 110 S.Ct. 2176, 109 L.Ed.2d 505 (1990). Supplementation of the administrative record is not permissible in this case because plaintiff has made no showing that the USDA acted improperly or in bad faith.

### E. Review of the USDA Decision

■ Plaintiff requests that this Court conduct a *de novo* review of the USDA decision because the decision was unwarranted by the facts, and because the USDA fact-finding procedures were inadequate. *See* 5 U.S.C. § 706(2)(F).[8] Defendant disagrees with plaintiff's assertion and argues that the agency decision can only be set aside if it is arbitrary or capricious or an abuse of discretion under 5 U.S.C. § 706(2)(A).

■ Generally, *de novo* review of an agency decision is appropriate under the Administrative Procedure Act when the action is adjudicatory in nature and the agency's fact-finding procedures were inadequate, or new issues are raised in a proceeding to enforce nonadjudicatory agency actions. *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973); *Friends of Endangered Species, Inc. v. Jantzen*, 760 F.2d 976, 982 n. 5 (9th Cir. 1985). Additionally, before the agency de-

---

**7.** Plaintiff does not challenge the USDA's authority under 21 U.S.C. § 111 to create and/or suspend the "specifically approved stockyard" status. Consequently, the court will not address this issue in the present order.

**8.** In reviewing this claim the Court notes that plaintiff merely lists the alleged procedural deficiencies, and fails to provide any legal argument

why it was entitled to more or different procedure. Interestingly, plaintiff does not raise the issue of whether the procedure provided by the USDA was sufficient under the 5th Amendment guarantee of procedural due process. Since plaintiff did not present the argument in this case, the Court will not review the law on this issue.

cision can be set aside, the Court must take account of whether the agency action resulted in prejudicial error. *See Panhandle Co-op. Ass'n, Bridgeport, Neb. v. E.P.A.,* 771 F.2d 1149 (8th Cir.1985). Plaintiff claims that the USDA utilized inadequate fact-finding procedures because, *inter alia,* the case was assigned to a hearing officer instead of an administrative law judge, there was no right to use subpoenas, and defendant did not submit evidence on the impact of the sanction.[9]

■ Upon review of the record, the Court does not believe that the fact-finding procedures were so inadequate as to require a *de novo* review of the USDA decision. Plaintiff implies that the hearing officer was not an impartial decision-maker because he was employee of the USDA. Generally, there is a presumption of honesty and integrity by an agency decision-maker, and the party claiming otherwise has the burden of proof. *Hadges v. Corbisiero,* 760 F.Supp. 388, 391 (S.D.N.Y.1991). In this case, plaintiff offers nothing more than mere speculation that the hearing officer was biased in favor of the USDA.

Second, plaintiff fails to prove that the denial of subpoena power prejudiced it's right to adequate hearing procedures in this case. Plaintiff indicates that the lack of subpoena power hindered the right to conduct full discovery and to cross-examine the stockyard inspectors who completed the inspection reports. As evidence of prejudice, however, plaintiff points only to the inability to subpoena Dr. James Badger, and admits that Dr. Badger's testimony was gained through discovery in a pending state proceeding. Plaintiff's complaint that he was unable to cross-examine the stockyard inspectors is discounted by the fact that there is no absolute right to cross-examination in administrative proceedings. *Beauchamp v. De Abadia,* 779 F.2d 773 (1st Cir.1985).

■ Finally, plaintiff's concern that defendant did not submit evidence on the impact of the penalty is not inadequate procedure. The assessment of a sanction is not required to be a fact-finding procedure, and the ultimate decision is within the discretion of the agency. *Beall Construction Co. v. Occupational Safety and Health Review Commission,* 507 F.2d 1041, 1046 (8th Cir.1974). Plaintiff cites the case of *Bosma v. USDA,* 754 F.2d 804 (9th Cir.1984) for the proposition that defendant was required to submit evidence on the proposed sanction. However, in *Bosma* the controlling statute specifically required the defendant to produce evidence on the impact of the penalty. There is no similar requirement imposed by statute or regulation in this case.

■ Since plaintiff has failed to prove any procedural deficiencies, a *de novo* review of the USDA decision is improper in this case. Alternatively, the court will review the USDA decision under the standard of review for informal adjudicatory hearings, which is whether the agency action was arbitrary or capricious under 5 U.S.C. § 706(2)(A). *Duke Power Co. v. U.S. Nuclear Regulatory Commission,* 770 F.2d 386, 389 (4th Cir.1985). This scope of review is narrow and the court may not substitute its judgment for that of the agency. *Brotherhood of Railway and Airline Clerks v. Burlington Northern, Inc.,* 722 F.2d 380 (8th Cir.1983). An agency's decision is arbitrary and capricious "only where it is not supportable on any rational basis." *Id.* at 381.

■ Based upon the record and the findings in this case, the court believes that the USDA's decision to suspend the "specifically approved stockyard" status is supported by a rational basis. The Stockyard was inspected twice by the USDA. The inspection reports revealed sanitation problems, and several incidents of failure to properly maintain the identification of live-

---

9. Plaintiff also cited several other instances of inadequate procedure claiming that he did not have possession of his own records at the time of the hearing, and that inadequate copies of documents were admitted into evidence. The court will not consider these claims because plaintiff does not provide sufficient evidence to show that these incidents affected the fact-finding procedure.

stock handled in the Stockyard. After being put on notice of the violations, the USDA found that plaintiff failed to properly and expeditiously cure the problems at the Stockyard.

Plaintiff attacks the USDA's finding that plaintiff was responsible for the violations committed by the individual livestock commission companies that operated in the Stockyard. The USDA found that plaintiff signed an agreement which states that the market operator is responsible for the day-to-day operations of the stockyard. From this agreement, the USDA found that plaintiff assumed an affirmative duty to maintain the stockyard in accordance with the provisions in the agreement. Based upon the terms of the agreement signed by plaintiff, the court agrees that the USDA had an adequate basis for finding that plaintiff was responsible for the actions of the independent livestock commission companies.

In view of the USDA's findings in this case, the court believes that the USDA did not act arbitrarily or capriciously in suspending plaintiff's "specifically approved stockyard" status.

## F. Five-year Suspension

 Plaintiff argues that the USDA's decision to suspend plaintiff's "specifically approved stockyard" status for a period of five years should be set aside.[10] Plaintiff claims that it was not notified of the sanction that the USDA intended to impose, and that neither party submitted evidence on the impact of the sanction imposed.

 Judicial review of an agency's decision to impose a sanction or penalty is limited to whether the agency made an allowable judgment given the facts of the case and the applicable statutes. *Cox v. United States Department of Agriculture*, 925 F.2d 1102 (8th Cir.), *cert. denied*, — U.S. ——, 112 S.Ct. 178, 116 L.Ed.2d 141 (1991). Generally, an agency's decision as to the sanction should not be

reversed unless it is unwarranted by the law or without justification in light of the facts. *Panhandle Coop Ass'n. v. EPA*, 771 F.2d 1149, 1152 (8th Cir.1985).

Although the Court agrees that plaintiff was in violation of the terms of the agreement with the USDA, the Court believes that the USDA decision to impose a five-year suspension was not an allowable judgment given the facts of this case. Even though the Court acknowledges that there were various sanitation violations and problems maintaining the identity of the cattle, the Court finds significant that plaintiff made marked improvements at the Stockyard between the first and second inspection. A comparison of the inspection reports reveals that the sanitation conditions improved after the first inspection. (Vol. III, Tr. 879–82). Importantly, the hearing officer noted that plaintiff achieved "satisfactory sanitation" by the time the Notice of withdrawal of approval was sent to plaintiff. (Vol. I, Tr. 60–61). Furthermore, the findings of fact in this case show that of the ten incidents of plaintiff's failure to maintain the identity of cattle, only two of them occurred after the date of the first inspection. (Vol. I, Tr. 12–13).

In issuing the order to withdraw the "specifically approved stockyard" status for five years, the Deputy Administrator did not provide any reason for choosing a five-year suspension. The Deputy Administrator did not note that plaintiff had improved the conditions between the first and second inspection, and that plaintiff offered evidence of compliance after the second inspection. The Court believes that these facts are relevant in assessing the penalty, and that the decision of the Deputy Administrator was unduly harsh given the facts of this case. Therefore, the Court finds that the five-year suspension of plaintiff's "specifically approved stockyard" status should be reduced to a period of six months.

---

**10.** Defendant has indicated that the action taken by the USDA was not a penalty or sanction. However, under 5 U.S.C. § 551(10)(G), a sanction is defined as "taking other compulsory or restrictive action." Clearly, the effect of the USDA's decision to suspend the federally approved status was to restrict plaintiff's ability to operate the Stockyard.

*G. Remaining Motions*

 Before disposing of this case, the Court must rule on two other motions filed by defendant. Defendant filed a motion to suspend Local Rule 15 requiring discovery schedules. This motion will be withdrawn as moot. Defendant also filed a motion to strike portions of plaintiff reply brief which exceeded the point originally raised by plaintiff in its motion for summary judgment. Although the Court would discourage plaintiff's approach to raising issues in this manner, defendant was given the opportunity to fully respond to plaintiff's arguments. Defendant's motion is denied.

### III. CONCLUSION

Based upon the arguments presented by both parties and for the reasons set forth in this order, it is hereby

ORDERED that plaintiff's motion for summary judgment be denied in part and granted in part. It is further

ORDERED that defendant's cross-motion for summary judgment be granted in part and denied in part. It is further

ORDERED that the Deputy Administrator's order withdrawing plaintiff's "specifically approved stockyard" status be reduced from a period of five years to a period of six months. It is further

ORDERED that defendant's motion to suspend Local Rule 15 be withdrawn as moot. It is further

ORDERED that defendant's motion to strike be denied. It is further

ORDERED that the above-styled case be dismissed with prejudice.