Myles C. CULBERTSON,
Petitioner–Appellant,

v.

UNITED STATES DEPARTMENT OF
AGRICULTURE, Respondent–
Appellee.

No. 94–9570.

United States Court of Appeals,
Tenth Circuit.

Nov. 1, 1995.

M. Karen Kilgore of White, Koch, Kelly & McCarthy, P.A., Santa Fe, New Mexico, for Petitioner–Appellant.

Margaret M. Breinholt, Acting Assistant General Counsel, United States Department of Agriculture (James Michael Kelly, Associate General Counsel, and Sheila Novak, Attorney, United States Department of Agriculture, with her on the briefs), for Respondent–Appellee.

Before KELLY and SETH, Circuit Judges, and BROWN, District Judge.[†]

PAUL KELLY, Jr., Circuit Judge.

Myles C. Culbertson seeks review of a final order of the Secretary of the United States Department of Agriculture (USDA), which imposed civil sanctions upon him for aiding in the interstate movement of cattle in violation of the Contagious Cattle Disease Act (CCDA), 21 U.S.C. §§ 111, 120 and 122, and various regulations, 9 C.F.R. §§ 78.1–78.44 (1995).[1] We exercise jurisdiction under 28 U.S.C. § 2342(2) and reverse.

### Background

Mr. Culbertson is a rancher and farmer who occasionally works as a cattle broker. In early 1987, Mr. Culbertson learned that Mr. M.S. Major, Jr. of New Mexico was interested in selling approximately 600 head of cattle. Mr. Culbertson agreed to act as a "go-between" for Mr. Major and, as such, assumed the responsibility of finding a suitable buyer for the cattle, but not arranging health certification or transportation of the animals. Tr. (Culbertson) at 228–30. Mr. Culbertson entered into formal negotiations with Jeff Weber, a broker for another rancher Eugene Miller. Mr. Culbertson transported Mr. Weber to Mr. Major's ranch, presented the cattle and, eventually, negotiated a sale price. Blood taken from the herd in February 1987 revealed the presence 14 suspected vectors of brucellosis.

Although the record indicates that Mr. Culbertson was unaware of the infection, Tr. (Culbertson) at 235, 250; Tr. (Pemberton) at 38, the owners were informed of this fact on March 4, 1987. Three days later, Mr. Major and several ranch employees loaded 53 bulls and 20 cows onto trucks for shipment to South Dakota. The trucks departed and, at the request of Mr. Major's son (Mr. Stuart Major), Mr. Culbertson and Mr. Weber followed the trucks about 50 miles to a veterinary clinic in Los Lunas, New Mexico, to pick up health certificates. At the clinic, Mr. Culbertson received an envelope containing the certificates and delivered it to the truckers, who then departed on their interstate journey to South Dakota. Mr. Culbertson did this as a favor to Mr. Major, did not examine the health certificates and therefore was unaware that they were incomplete due to their failure to identify each animal by eartag. Tr. (Culbertson) at 250–51; Tr. (Griggs) at 172. Due to the faulty certificates, the shipment violated 9 C.F.R. 78.9(b)(3)(ii).[2]

Two days later, on March 9, 1987, Mr. Culbertson again drove Mr. Weber to the Major ranch where the remaining cattle were loaded for shipment to Nebraska. However, the shipment to Nebraska was canceled when it was determined that Mr. Weber could not obtain entry into South Dakota for the first shipment due to the presence of the suspected vectors. Several weeks later, on April 8, 1987, Mr. Culbertson learned that Dr. Ronald L. Pemberton, a USDA station epidemiologist in Albuquerque, had reclassified the suspect cattle as stabilized suspects, thereby enabling their interstate movement. Health certificates were issued and, for the sake of

---

[†] The Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation.

1. The CCDA authorizes the Secretary of Agriculture (Secretary) to promulgate regulations to prevent the introduction or dissemination of any contagious, infectious or communicable disease of animals from one State to another. 21 U.S.C. § 111. The CCDA further empowers the Secretary to impose a civil penalty of not more than $1,000 upon any person who violates the provisions of the CCDA or regulations promulgated thereunder. 21 U.S.C. § 122.

2. Section 78.9(b)(3)(ii) requires that the cattle be moved only when accompanied by the appropriate certificate. The certificate must meet the requirements of 9 C.F.R. § 78.1. Specifically, the "certificate must show the official eartag number, individual animal register breed association registration tattoo ... brand ... number, or similar individual identification of each animal to be moved...." 9 C.F.R. § 78.1 (1995).

convenience, on April 12, 1987, Mr. Culbertson drove Mr. Weber, Mr. Miller and Dr. Gregory Griggs, an accredited veterinarian, to the Major ranch to inspect the cattle once again. Mr. Culbertson had nothing whatsoever to do with the inspection, nor was he compensated for his chauffeuring activities. Later that day, and again on April 13th and April 14th, 1987, the remainder of the herd, approximately 557 head of cattle, was loaded for shipment to Nebraska. However, at least 20 of the animals in the Nebraska shipment were not tested for brucellosis within the thirty days prior to their interstate shipment, constituting an additional violation of 9 C.F.R. § 78.9(b)(3)(ii).[3]

In 1990, the Administrator of the Animal and Plant Health Inspection Service (APHIS) filed a complaint against Mr. Weber, Mr. Miller, Mr. M.S. Major, Mr. Stuart Major and Mr. Culbertson, claiming that the respondents "moved" cattle in violation of 9 C.F.R. § 78.9(b)(3)(ii). On April 12, 1994, an administrative law judge (ALJ) entered an Initial Decision and Order assessing civil penalties against the Majors, but dismissing the case against Mr. Culbertson, finding that his involvement with the Majors' cattle transactions violated neither the CCDA nor the Regulations. The USDA appealed the ALJ's Decision and Order with regard to Mr. Culbertson to the Secretary, who referred the matter to the Judicial Officer (JO). The JO reversed the ALJ's Decision and Order by adding bracketed portions and concluding that

> "[Mr. Culbertson did 'aid' in the movement by facilitating the meetings, transporting principals, escorting veterinarians, etc.].... He did not [physically] move, ship, transport, deliver or receive them for movement, ... [but, Mr. Culbertson's activities fit squarely within the prohibitions against indirectly aiding, inducing, or otherwise causing movement as set forth in the 1986 amendments to the regulations]...."

**3.** Section 78.9(b)(3)(ii) in pertinent part prohibits the movement of test-eligible cattle to areas other than recognized slaughtering establishments or quarantined feedlots unless "[s]uch cattle are

JO Dec. and Order at 18. The JO assessed a penalty of $1500 against Mr. Culbertson.

*Discussion*

We accord an agency broad discretion in administering the law and interpreting its enabling statute. *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). An agency is entitled to even greater deference when it acts pursuant to an interpretation of regulations promulgated by the agency itself. *Valley Camp of Utah, Inc. v. Babbitt,* 24 F.3d 1263, 1267 (10th Cir.1994) (citing *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965)). This principle of deference, however, is not absolute. The Court of Appeals need not accept an agency's interpretation of its own regulations if such interpretation is "'unreasonable, plainly erroneous, or inconsistent with the regulation's plain meaning'." *Lewis v. Babbitt,* 998 F.2d 880, 882 (10th Cir.1993) (quoting *Bar MK Ranches v. Yuetter,* 994 F.2d 735, 738 (10th Cir.1993)).

The issue is whether Mr. Culbertson "moved" cattle as that term is used in the Regulations. *See* 9 C.F.R. § 78.1 (1995). Section 78.1 defines "moved" as "[s]hipped, transported, delivered, or received for movement, or otherwise aided, induced, or caused to be moved." 9 C.F.R. § 78.1. Until 1986, the definition of "moved" primarily focused on the transportation component of the activity. However, in 1985 the APHIS proposed to expand the definition of "moved" to impose legal responsibility upon other parties indirectly responsible for unauthorized movement. When adopting the expanded definition, the USDA expressly rejected comments that the definition of "moved" was too broad and indicated its desire to "extend legal responsibility for violations to persons indirectly responsible for unauthorized movement, i.e., a veterinarian who prepares false documents or a seller who promises to have animals tested but does not." 51 Fed.Reg. 32,574, 32,577 (1986). Under the expanded defi-

negative to an official test within 30 days prior to such interstate movement...." 9 C.F.R. § 78.9(b)(3)(ii).

nition, liability under the Regulations requires an element of culpability together with direct involvement in the movement of cattle. According to the JO, Mr. Culbertson's transportation of persons and documents as a courier, coupled with his presence at the time of shipment from the Major ranch, sufficed to establish a basis upon which liability could be imposed under the Regulations.

We disagree. In our opinion, the JO's interpretation of "moved" in this instance is insupportably broad. Here, the connection between the conduct complained of and the illegal shipment of cattle is too tenuous to support liability under the Regulations. Mr. Culbertson's participation in the transaction was limited to that of a broker. Tr. (Culbertson) at 230, 255. At no time did Mr. Culbertson own or control the cattle or influence the decisions prerequisite to their interstate movement. *Id.* at 228–30. He merely advised Mr. Major on the sale of his cattle, presented the cattle to potential buyers and negotiated a sale price. He did not possess the authority to arrange delivery of the cattle and did not assist in loading the cattle. *Id.* at 228, 239. Although as a favor to Mr. Major he picked up the health certificates from the veterinarian and delivered them to the truckers, Mr. Culbertson had no obligation or responsibility to read or verify the certificates and did not know of the potential infection in the herd; instead, he reasonably relied upon those who owned and controlled the cattle to comply with the Regulations. *Id.* at 230, 235–36, 250. The decisions cited by the USDA do not support the imposition of liability for the acts complained of here but, rather, penalize persons who owned, controlled or in some way exercised discretion or responsibility over the movement of infected cattle, *see, e.g., Terry Horton and Johnny Horton,* 50 Agric.Dec. 430 (1991) (purchasers); *Dean Reed d/b/a/ Dean Reed Cattle Company,* 52 Agric.Dec. 90 (1993) (purchasers and transporters), *aff'd,* 39 F.3d 1192, 1994 WL 596616 (10th Cir. Nov. 1, 1994) (unpublished opinion), or involve statutes and regulations that are not at issue here and are easily distinguishable on the facts, *see, e.g., Valkering U.S.A., Inc. v. USDA,* 48 F.3d 305 (8th Cir.1995) (Plant Quarantine Act and Federal Plant Pest Act), *aff'g Unique Nursery and Garden Center, et al.,* 53 Agric.Dec. 377 (1994).

In our opinion, Mr. Culbertson did not "move" cattle. To impose liability upon Mr. Culbertson for transporting parties and documents or witnessing the loading of infected cattle onto trucks suggests a strained interpretation of the Regulations. Using the logic employed by the USDA, the Secretary conceivably could impose liability upon the sale barn owner, or a chauffeur who transports the parties to the negotiations, or a mail courier who delivers the health certificates or a ranch hand who is present during the loading of the infected cattle. At some point, one's involvement in the movement of cattle simply becomes too attenuated to support liability.

REVERSED.