**ALLCARE HOME HEALTH, INC., Plaintiff,**

v.

**Donna SHALALA, Secretary of the Department of Health and Human Services Defendant.**

**No. CIV. A. 00–K–307.**

United States District Court, D. Colorado.

Aug. 11, 2000.

Patrick D. Vellone, Gregory W. Johnson, Vinton Nissler Allen & Vellone, P.C., Denver, CO, for Plaintiff.

William G. Pharo, Assistant U.S. Attorney, U.S. Attorney's Office, Denver, CO, for Defendant.

## MEMORANDUM DECISION ON APPEAL

KANE, Senior District Judge.

Plaintiff AllCare Home Health, Inc.("AllCare") requests judicial review of the final decision of Defendant Donna E. Shalala, Secretary of the Department of Health and Human Services, disallowing $60,000 termed as bonus payments that AllCare claimed as compensation on its Medicare cost report for Vinod Bhasin, its owner/chief executive officer ("CEO") and his wife, Constance Bhasin, its owner/chief financial officer ("CFO") for fiscal year 1996. The issue is whether the final agency decision disallowing the payments is supported by substantial evidence. Jurisdiction exists under 42 U.S.C. § 1395oo(f)(1) and the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.* I affirm.

## I. *BACKGROUND.*

AllCare is a for-profit home health agency providing home health services to Medicare beneficiaries and other persons in the greater Denver area. As a Medicare home health provider, it is paid the lesser of the "reasonable cost" of or the "customary charges for" services it provides to Medicare beneficiaries. *See* 42 U.S.C. § 1395f(b)(1). The Health Care Financing Administration (HCFA) of the Department of Health and Human Services administers the Medicare program. HCFA contracts with private insurance companies known as "fiscal intermediaries" as its agent in processing and paying claims from Part A providers. 42 U.S.C. § 1395h. Such providers agree to accept Medicare payment for their services as payment in full. 42 U.S.C. § 1395cc.

As a home health service provider, All-Care is reimbursed for the Medicare services it provides in advance of submitting a cost report for a given year. It must submit a cost report to the fiscal intermediary reflecting its costs for the reporting period in question. The fiscal intermediary reviews the cost report and if it determines the provider was overpaid, issues a notice of program reimbursement to the provider. *See* 42 C.F.R. § 405.1803 (1999).

For fiscal year 1996, AllCare claimed on its Medicare cost report bonus payments of $33,000 for its CEO and $27,000 for its CFO. (A.R. at 36.) The total compensation, including bonuses, claimed by AllCare on its Medicare cost report for the fiscal year was $127,000 for its CEO and $97,000 for its CFO. (*Id.*) The government's fiscal intermediary, Wellmark Blue Cross and Blue Shield, adjusted the compensation amounts AllCare claimed on its Medicare cost report by approximately $60,000, effectively disallowing the bonuses paid to AllCare's owners as CFO and CFO. (A.R. at 46, 869.)

AllCare timely appealed the adjustment to the Provider Reimbursement Review Board ("PRRB") which held a hearing on January 28, 1999 (A.R. at 129–400.) The PRRB's December 9, 1999 decision reversed the fiscal intermediary's adjustments concerning the salary and benefits amounts paid by AllCare, and allowed $94,000 for the CEO and $70,000 for the CFO, finding these amounts to be reasonable owners' compensation. (A.R. at 49, 52.) The PRRB excluded bonus payments of $33,000 and $27,000 from the total amounts of compensation paid to the CEO and CFO, finding they should not be treated as allowable compensation in the determination of AllCare's reasonable costs. (*Id.*) AllCare petitioned the HCFA Administrator for review of the PRRB decision. (A.R. at 5–31.) The HCFA Administrator declined to review that decision. (A.R. at 1–4.) This action for judicial review followed.

## II. *STANDARD OF REVIEW.*

■ Judicial review of a final administrative decision under the Medicare pro-

gram is governed by provisions of the Social Security Act, 42 U.S.C. § 1395oo(f). Under this law, the court looks to the Administrative Procedure Act which provides judicial review of agency decisions is limited "to a determination of whether the agency action, findings and conclusions are arbitrary, capricious, and abuse of discretion or otherwise not in accordance with law or unsupported by the evidence." 5 U.S.C. § 706(2)(A). *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 511, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994). The party challenging the agency action has the burden of showing it is arbitrary and capricious. *See Angel v. Butz*, 487 F.2d 260, 263 (10th Cir.1973). An agency's interpretation of its regulations is controlling unless it is plainly erroneous or incongruent with the language of the regulation. *See Culbertson v. USDA*, 69 F.3d 465, 467 (10th Cir.1995). Courts are highly deferential to the Secretary in her interpretation of the complex Medicare Statute. *See Methodist Hosp. of Sacramento v. Shalala*, 38 F.3d 1225, 1229 (D.C.Cir.1994).

### III. *MERITS.*

#### A. *Owner Compensation.*

■ AllCare submits the PRRB's disallowance of the bonuses paid to the CEO and CFO was arbitrary, capricious, erroneous as a matter of law and unsupported by the evidence because the bonuses were reasonable costs to the Medicare program. The Social Security Act states the providers of Medicare services are to be reimbursed for the "reasonable cost" of providing these services, which is "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, and shall be determined in accordance with regulations establishing the method or methods to be used and the items to be included, in determining such costs for various types or classes of institutions, agencies and services ...," 42 U.S.C. § 1395x(v)(1)(A). In addition, the Medicare regulations state: "All payments

to providers of services must be based on the reasonable cost of services covered under Medicare and related to the care of beneficiaries". 42 C.F.R. § 413.9(a) (1999). "Reasonable cost includes all necessary and proper expenses incurred in furnishing services, such as administrative costs, maintenance costs, and premium payments for employee health and pension plans." 42 C.F.R. § 413.9(b)(3).

The regulations "take into account both direct and indirect costs of providers of services" and "provide for the making of suitable retroactive adjustments after the provider has submitted fiscal and statistical reports." *Id.* § 413.9(b)(1). Such adjustment represents "the difference between the amount received by the provider during the year for covered services from both Medicare and the beneficiaries and the amount determined in accordance with an accepted method of cost apportionment to the actual cost of services furnished to beneficiaries during the year." *Id.*

The Medicare regulations further provide for compensation of an owner/employee, stating: "A reasonable allowance of compensation for services of owners is an allowable cost provided that the services are actually performed in a necessary function." 42 C.F.R. § 413.102(a). Section 902 of the Medicare Provider Reimbursement Manual ("PRM") allows for such compensation in an "amount determined to be the reasonable value of the services rendered regardless of whether there is any actual distribution of the profits of the business." (A.R. at 715.) Compensation paid to an owner may only be included "to the extent that it represents reasonable remuneration for managerial, administrative, professional and other services related to the operation of the facility and rendered in connection with patient care" including administration, management, and supervision of the overall institution. (*Id.*) Section 902.2 expressly states: "Payments found to represent a return on equity capital are not compensation and are in no event allowable as an

item of reimbursable cost. Nor are such payments considered as compensation for purposes of determining the reasonable level of reimbursement of the owner." (A.R. at 715.)

AllCare acknowledges, "[t]he amount of the bonuses was determined in consideration of the year-end financial status of the company by the owners in consultation with the company's reimbursement consultant." (Pl.'s Br. at 2; A.R. at 188–191.) AllCare further states its owners, "Mr. and Mrs. Bhasin, as the CEO and CFO of the company, respectively, and Mr. Baird, the reimbursement consultant, set a base salary for themselves at the start of the year which was then adjusted upward at the end of the year depending on the projected success of the Company operations." (Pl.'s Br. at 3.) Mr. Bhasin testified his base salary and that of Mrs. Bhasin were set after working with different consultants and friends, (A.R. at 172, 176), and the compensation amounts had not been adjusted in previous years, (A.R. at 45). Mr. Bhasin further testified AllCare considered it was "well beneath the caps" and considered the difference between the Medicare cost limits and its actual reportable (Medicare) costs in setting the bonuses paid to himself and his wife as CEO and CFO, respectively. (A.R. at 190–192.) In response to questions concerning the decision process leading to the payment of the bonuses, Mr. Bhasin testified: "Essentially, those numbers are, if you've got a certain pool of money and we're looking at how it's going to be divided, the numbers may end up, each year, they end up differently." (A.R. at 199.)

The record contains substantial evidence, including the above-quoted testimony, to support the PRRB's finding that the bonus payments claimed as owners' compensation for the CEO and CFO resulted from AllCare's "year-end analysis of its actual reportable costs versus the maximum amount of program reimbursement obtainable without exceeding the Medicare cost limits" and were analogous to the payment of return on equity capital, not to be treated as allowable compensation in the determination of AllCare's reasonable cost. (A.R. at 49.)

**B.** *Due Process.*

AllCare further argues it was denied due process. It asserts, although the sole issue before the PRRB was whether the intermediary's adjustments to the owner's compensation was proper, the PRRB denied AllCare due process, adopting a post-hearing argument not raised or briefed sufficiently to allow AllCare a proper opportunity to respond. However, the Social Security Act and applicable regulations clearly provide claimed compensation will not be treated as an unallowable Medicare cost unless an owner can show it was for services actually rendered in delivering health care. Mr. Bhasin's testimony concerning the calculation of the bonuses was at issue with this requirement. AllCare had the opportunity in its post-hearing brief to address and clarify this testimony but did not do so.

### IV. *CONCLUSION.*

For the aforesaid reasons, I AFFIRM.